# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT BONADEO, an individual,

      Plaintiff,

vs.                                                                      No. CIV-08-0812 JB/ACT

BEN LUJAN, SPEAKER OF THE HOUSE OF
REPRESENTATIVES OF THE STATE OF NEW
MEXICO, in his personal and/or representative
capacities; JIM TRUJILLO, STATE OF NEW MEXICO
REPRESENTATIVE, In his personal and/or representative
capacities; DEBORAH RODELLA, STATE OF NEW
MEXICO REPRESENTATIVE, in her personal and/or
representative capacities; AL PARK, STATE OF NEW
MEXICO REPRESENTATIVE, in his personal and/or
representative capacities; FRED O'CHESKEY, LOBBYIST,
in his personal and professional capacities; MAURICE
BONAL, LOBBYIST, in his personal and professional
capacities; MALOOF COMPANIES, a New Mexico
corporation; NEW MEXICO ALCOHOL BEVERAGE
WHOLESALERS ASSOCIATION, a non-profit corporation
operating under the laws of the State of New Mexico;
SOUTHERN WINE AND SPIRITS OF NEW MEXICO,
a New Mexico corporation; and DOES 1-20, inclusive,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on Plaintiff Robert Bonadeo's Motion to Remand and For Costs on the Grounds of Defective Removal and Lack of Federal Question or, in the Alternative, to Remand All Claims in Which State Law Predominates, filed October 6, 2008 (Doc. 18). The Court held a hearing on April 29, 2009. Bonadeo's primary arguments are that the removal was defective because all of the Defendants did not join in the Notice of Removal and because there is a lack of a federal question. Bonadeo argues, in the alternative, that the Court

should remand all issues in which state law predominates.  Because this action was properly removed to the federal court, and because the federal court has original and supplemental jurisdiction over the claims, the Court will deny Bonadeo's motion.

## FACTUAL BACKGROUND

Plaintiff Robert Bonadeo is a resident of Santa Fe County, State of New Mexico.  All of the known Defendants are individuals who reside in the State of New Mexico, or are entities who are incorporated or are authorized to do business in New Mexico.  Bonadeo has not ascertained the residency of the unknown Does.

The facts as described by Bonadeo in his Complaint are as follows:

Bonadeo had made arrangements with The Santa Fe Brewing Company, in Santa Fe, New Mexico, to begin, on its property, the operation of a small local microdistillery, which would manufacture and sell on-site small quantities of micro-distilled liquor and spirits.  On or about February 2007, Bonadeo authored Senate Bill 1071, "SMALL LIQUOR DISTILLER LICENSES," which would permit the manufacture and on-site sale of micro-distilled liquor and spirits.  Bonadeo had worded SB 1071 similar to the law for small wineries and small breweries, see NMSA 1978 60-6A-21.  State senator John Grubesic sponsored SB 1071.  The Senate Corporations and Transportation Committee and Senate Judiciary Committee passed SB 1071.

Bonadeo believes that Defendant Maurice Bonal is a lobbyist for some of the major large beverage alcohol interests in New Mexico.  Bonadeo believes that Defendant Fred O'Cheskey is a lobbyist for Defendant Maloof Companies, Southern Wine and Spirits, and the New Mexico Alcohol Beverage Wholesales Association.  In February 2007, Bonadeo overheard O'Cheskey talking with another person.  It appeared to Bonadeo that the two individuals were opposed to SB 1071.  Bonal bragged to Bonadeo that, if he "were against [Bonadeo's] bills, it wouldn't even get out of

committee." Complaint ¶ 31, at 7.  During the legislative session, Bonal and Bonadeo talked about SB 1071.  Bonadeo believed that Bonal supported SB 1071.  SB 1071 was passed in the House Judiciary Committee. The House Business and Industry Committee initially tabled SB 1071 because of objections by Jim Trujillo.  See Complaint ¶ 33, at 8. Later that same day, when Trujillo was absent, SB 1071 passed in that committee.

Bonadeo alleges that the following day, when Trujillo learned that SB 1071 had passed, Trujillo made a threat to Debbie Rodella, Chair of the House Business and Industry Committee, that he would resign from her committee if SB 1071 was made law. See Complaint ¶ 35, at 8.  As a result, a deal was made between Trujillo, Ben Lujan, Al Park and Rodella that Lujan would make a motion to send SB 1071 back to the House Business and Industry Committee when SB 1071 came up on the agenda for a vote on the floor.  See Complaint ¶ 35, at 9.

On or about Friday, March 16, which was the last full day of the legislative session, SB 1071 was directed to the House of Representatives for a vote on the House floor.  About an hour before SB 1071 was expected on the House floor, Bonadeo heard from several sources that a deal had been made between Trujillo and Lujan that Lujan would refuse to bring SB 1071 to the House floor for vote.  See Complaint ¶ 36, at 9.  Bonadeo then talked with Park, "who had promised to carry SB 1071 through the House."  Complaint ¶ 37, at 9-10.[1]

When SB 1071 was called for vote, Lujan acted to send SB 1071 back to the House Business

---

[1]Bonadeo states that during this discussion Bonadeo believed that Park made some false statements to him and stated so to Park.  Bonadeo then states that Park attempted to assault him.  See Complaint ¶ 37, at 10.  No further description of this "assault" is made in the document, although Bonadeo mentions assault as an act of the Defendants in his fourth cause of action.  See Doc. 1-2 ¶ 76, at 16.

and Industry Committee but on a Representative's[2] objection, SB 1071 was instead placed as item #1 on the next day's agenda.  The next day, Lujan did not open SB 1071 for a vote.  The legislative session ended without SB 1071 being passed.

## PROCEDURAL BACKGROUND

On August 15, 2008, Bonadeo filed Plaintiff's Complaint for Damages with the First Judicial District Court for the State of New Mexico, County of Santa Fe as cause CV-2008-02280.  See Doc. 1-2.

Bonadeo's first count is for civil conspiracy.   In the Complaint, he alleges that the Defendants acted in concert to deny him his civil rights.  See Complaint ¶ 49, at 12.  He states in his Complaint that the Defendants' conduct "renders [them] liable to the Plaintiff for damages under the various federal and state constitutional provisions and federal and state statutes . . . including but not limited to 18 U.S.C. § 241, 42 U.S.C. § 1983 and  42 U.S.C. § 1985(3)."  Complaint ¶ 49, at 12.  Bonadeo's Complaint also includes a count for "Civil Liability for Violation of Civil Rights."  Complaint ¶¶ 66-73, 15-16.  In this count, Bonadeo alleges that the defendants violated his right to due process "contained in the federal and state constitutions."  Id. ¶ 72, at 16.

Bonadeo also includes a count for "Civil Liability for Engaging in and Acting as a Racketeering, Influenced and Corrupt Organization."  Complaint ¶¶ 74-80, at 16-17.

On September 5, 2008, Lujan, Trujillo, Rodella and Park filed a Notice of Removal of the matter.  See Doc 1.  The basis of the Notice of Removal was that the federal court has original jurisdiction because the Complaint is founded on a claim or right arising under the Constitution, treaties or laws of the United States.  See Notice at 2.  Lujan, Trujillo, Rodella and Park assert that

---

[2] The specific Representative was not identified in the documents.

the Court has federal-question jurisdiction.  <u>See</u> Notice at 3.

On October 6, 2008, Bonadeo filed a Motion to Remand and For Costs on the Grounds of Defective Removal and Lack of Federal Question or, in the Alternative, to Remand All Claims in Which State Law Predominates.  <u>See</u> Doc. 18.  Bonadeo asserts that the Notice of Removal was defective in that all Defendants did not join in the Notice.  <u>See</u> Motion ¶ 1 at 2.  Bonadeo further asserted that his action was not removable because there was no federal question.  <u>See</u> Motion ¶ 2, at 4.  In the alternative, Bonadeo requests that the Court remand all issues in which state law predominates.  <u>See</u> Motion ¶ 6, at 6.  Bonadeo also requests that the Court grant him costs, including attorney's fees, which he maintains should be interpreted as a monetary sanction.  <u>See</u> Motion ¶ 5, at 5-6.

On October 8, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association, and Southern Wine and Spirits filed their Notice of Consent to Removal. <u>See</u> Doc. 20.  On October 27, 2008, Lujan, Trujillo, Rodella and Park filed their Response to Motion for Remand.  <u>See</u> Doc. 24.  They argue in their Response that Bonadeo's motion for remand is premature, because Bonadeo had not served all of the Defendants a Complaint and because the motion was untimely in that it was filed thirty-two days after Lujan, Trujillo, Rodella, and Park had filed the Notice of Removal.  <u>See</u> Response at 10-11.  They further argue that, in the alternative, the removal was proper because the Court has original and supplemental jurisdiction over Bonadeo's 42 U.S.C. §1983, federal constitution and pendent state-tort claims, particularly because the state-tort claim is not "separate and independent" from the federal constitutional claims.  Response at 10. Lujan, Trujillo, Rodella and Park request that the Court award them attorney's fees and costs.

On November 13, 2008, Bonadeo filed Plaintiff's Reply to Defendants' Response to Motion to Remand to State Court and for Costs.  <u>See</u> Doc. 36.  Bonadeo replies that he has served all

defendants with proper service with the exception of Rodella, Bonal and Southern Wine and Spirits. Reply at 2.  Bonadeo further asserts that "all parties with the exception of Bonal were served through their attorneys who have been working on behalf of their clients, in the federal forum at least, since approximately September 5, 2008 for the so-called 'State Defendants' and since October 6 for the so-called 'Wholesaler Defendants.'"  Reply at 2.  Bonadeo asserts that Bonal's consent is required because, even though he was not served with a complaint, he was served with the Plaintiff's Motion to Remand on October 6, 2008.  See Reply at 3.  Bonadeo argues that his motion to remand was timely.  See Reply at 3.  Lastly, Bonadeo reiterates that there is a lack of a federal question in his Complaint.  Bonadeo again requests costs.

Bonal was served with the Complaint on January 6, 2009.  See Doc. 47.  Bonal filed his Notice of Consent to Removal on January 12, 2009.  See Doc. 53.

On April 29, 2009, the Court held a hearing with regard to the pending motions.  Bonadeo did not appear for the hearing.  When the Court called the number for Bonadeo that the Court had for him, the line indicated that his telephone had been disconnected.  The Court confirmed, however, that the notice of the hearing had been sent to him at the address on file with the Court and that the notice had not been returned to the Court.

### LAW REGARDING REMOVAL AND REMAND

Congress has statutorily provided a procedure for removal.  A defendant must be careful to meet all statutory requirements for removal.  Moreover, the removing defendant bears the burden of establishing that removal is proper.

### 1.    Procedure for Removal.

Congress has allowed certain defendants to remove cases over which federal courts would have original jurisdiction.  Because the right to removal is a statutory right, the defendants removing

a case must carefully follow all statutory requirements.  Moreover, the removing defendant – rather than the plaintiff – has the burden of proving jurisdiction and of establishing the right to removal.

A defendant may remove a state civil action "to the district court of the United States for the district and division embracing the place where such action is pending" if the federal district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). The right to remove is purely statutory.  Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D. N.M. 1998)(Campos. J.); Spillers v. Tillman, 959 F. Supp 364, 368 (S.D. Miss. 1997)(citing Lewis v. Rego Co., 757 F.2d 66, 68 (3d Cir. 1985)).  As the removing party, the defendant bears the burden of proving "all jurisdictional facts and of establishing a right to removal." Chavez v. Kincaid, 15 F. Supp. 2d at 1119 (citations omitted).

28 U.S.C. §1441 states, in relevant part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. . . .

Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand. See Fajen v. Foundation Reserve Ins. Co., Inc., 683 F.2d 331, 333 (10th Cir. 1982). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)(citation omitted).  "[A]ll doubts are to be resolved against removal." Fajen v. Foundation Reserve Ins. Co., 683 F.2d at 333.

"The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."

-7-

Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).  The Tenth Circuit has held that, to support removal jurisdiction, "the required federal right or immunity must be an essential element of the plaintiff's cause of action, and that the federal controversy must be 'disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'"  Madsen v. Prudential Federal Savings & Loan Ass'n., 635 F.2d 797, 800 (10th Cir. 1980)(citing Gully v. First National Bank, 299 U.S. 109, 113 (1936)).  The United States Court of Appeals for the Tenth Circuit has explained that, "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mutual Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).

28 U.S.C. § 1446 provides:

> (a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Id.  Although the procedure for a notice of removal set out in 28 U.S.C. § 1446(b) is couched in terms of a single defendant, courts have held that all defendants must joint a removal petition or removal will be defective.  See Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981).  See Spillers v. Tillman, 959 F. Supp. 364, 368 (S.D. Miss. 1997)(citing Northern Illinois Gas Co. v.

Airco Industrial Gases, Div. of Airco, Inc., 676 F.2d 270, 272 (7th Cir. 1982)); Padden v. Gallaher, 513 F. Supp. 770, 771 (E.D. Wis. 1981); Creekmore v. Food Lion, Inc., 797 F. Supp. 505, 508 (E.D. Va. 1992); Knickerbocker v. Chrysler Corporation, 728 F. Supp. 460 (E.D. Mich. 1990);  Fellhauer v. City of Geneva, 673 F. Supp. 1445, 1447 (N.D. 1987); Fields v. Reichenberg, 643 F. Supp. 777, 778 (N.D. Ill. 1986); Darras v. Trans World Airlines, Inc., 617 F. Supp. 1068, 1069 (N.D. Ill. 1985)). This requirement for consent by the co-defendants is known as the "rule of unanimity" and is based not on statute, but on case law.  See 14C C. Wright & A. Miller, Federal Practice and Procedure § 3731, at 258 (1998)("'[T]his judicial insistence on the participation of all of the defendants in the notice of removal . . . has been required by courts at all levels of the federal judiciary."); Spillers v. Tillman, 959 F. Supp at 368.  The "rule of unanimity" applies to federal-question cases. See id. at 369 (citing Hess v. Great Atlantic & Pac. Tea Co., Inc., 520 F. Supp. 373, 375 (N.D. Ill. 1981)).

Professor Moore states: "Because the right of removal is jointly held by all the defendants, the failure of one defendant to join in the notice precludes removal." 16 J. Moore, Federal Practice § 107.11[1][d], at 107-136 (3d ed. 2009).  The Supreme Court, in an early case interpreting the predecessor to 28 U.S.C. § 1441 construed the phrase "may be removed by the defendant or defendants" to mean that, where there are multiple defendants, all must join in removal.   Chicago, R. I. & P. R. Co. v. Martin, 178 U. S. 245, 246-49 (1900).  The Supreme Court did not explain how the language of the statute led to the result, but noted that the predecessor to the clause containing the phrase had been interpreted to require unanimity.  See id. at 247-48.  Although 28 U.S.C. § 1441 reflects revisions that have occurred since the decision in Chicago, R. I. & P. R. Co. v. Martin, the phrase the Court was interpreting has been retained.

Remand is required if all of the defendants fail to consent to the petition for removal within the thirty-day period. See id. (citing 28 U.S.C. § 1447(c); Fellhauer v. Geneva, 673 F. Supp. at

1447).  It is not required that each co-defendant sign the petition for removal provided that each co-defendant files a notice of their consent and intent to participate in the removal before the thirty-day period expires.  See id. (citing Jarvis v. FHP of Utah, Inc., 874 F. Supp. 1253, 1254 (D. Utah. 1995)).

Courts have recognized some exceptions to the unanimity rule.  For example, John Doe defendants are not required to join in the removal notice.  See 16 J. Moore, supra § 107.11[1][d], at 107-140 (citing, e.g., Green v. American Online, 318 F.3d 465, 470 (3d Cir. 2003)).  Moreover, some courts have held that unserved defendants need not join the notice of removal.  See J. Moore, supra § 107.11[1][d], at 107-140 (citing Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1429 (9th Cir. 1984); P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co., 395 F.2d 546, 547-48 (7th Cir. 1968); and Adams v. Lederle Labs., 569 F. Supp. 234, 243, 246 (W.D. Mo. 1983)).

"A 'defect in the removal procedure' is one of the two grounds for remand specified in 28 U.S.C. §1447(c)."  McShares, Inc. v. Barry, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (citing Page v. City of Southfield, 45 F. 3d 128, 131 (6th Cir. 1995))(quoted case omitted).  The requirement that a removal notice be timely is mandatory and is strictly construed, but it is not jurisdictional.  See McCain v. Cahoj, 794 F. Supp. 1061, 1062 (D. Kan. 1992).  The statute provides no guidance regarding when the thirty-day period begins to run – when the first defendant is served or when the last is served.

There is a split among the circuit courts regarding whether, in the case of multiple defendants, the thirty-day clock for removal begins running for all defendants when the first-served defendant receives service of process.  "Under the traditional view, if a case involves multiple defendants and the case is removable at that time, the 30-day removal period begins to run when the first defendant is served."  J. Moore, supra § 107.30[3][a], at 107-190.21.  Those circuit courts endorsing the traditional rule include the United States Court of Appeals for the Fourth Circuit and

-10-

the United States Court of Appeals for the Fifth Circuit.  See McKinney v. Board of Trustees of Maryland Community College, 955 F.2d 924, 926 n.3 (4th Cir. 1992)(apparently endorsing the traditional rule in dicta); Getty Oil v. Insurance Co. of North America, 841 F.2d 1254, 1262-63 (5th Cir. 1988).  Other circuit courts that have decided the issue have adopted a rule by which the thirty-day period begins running for each defendant at the time of service of process.  See Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202 (11th Cir. 2008);  Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 755 (8th Cir. 2001); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir.1999).

While the Tenth Circuit has not spoken on the issue, several judges in the District of New Mexico have adopted the traditional rule and stated that, when there are more than two defendants, the rule is that the thirty-day time period commences when service of process is accomplished on the first-served defendant.  See Walther v. Radioshack Corporation, No. Civ. 02-1001 WJ/LFG, Mem. Op. & Order (D.N.M. November 1, 2002); Sugg v. Albuquerque Pub. Sch. Dist., No. Civ 95-1184 LH/DJS, Mem. Op. & Order (D.N.M. Jan. 26, 1996); Ramsey v. CSG Security Servs., Inc., No. Civ. 95-888 LH/LCs, Mem. Op. & Order (D.N.M. Nov. 8, 1995); ITT Comm'l. Credit Corp. v. Hotel Dev. Corp., No. Civ. 91-634 M, Mem. Op. (D.N.M. Sept. 1991).

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).  Generally, without service of process having occurred, the court may not exercise jurisdiction over the unserved defendant.  See id.  The mere receipt of the complaint, without any formal service, is not sufficient to exercise jurisdiction. See id.

2. **Motions to Remand.**

If a defendant has removed a matter to federal court, the plaintiff may object to the removal

by filing a motion in federal district court to remand the case back to state court. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996).  Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).  The statute providing for remand also states: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Id.

### 3.     Attorney's Fees Under 28 U.S.C. § 1447(c).

A federal court remanding a removed case to state court for lack of subject-matter jurisdiction "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  The Supreme Court of the United States has recently clarified the standards governing an award of fees under § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).   It is not necessary that the plaintiff show that the defendants acted in bad faith to win attorney's fees. See Topeka Housing Authority v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005).

### LAW REGARDING FEDERAL JURISDICTION

Federal courts have limited jurisdiction, and there is a presumption against the existence of federal jurisdiction. See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974); Chavez v. Kincaid, 15 F. Supp. 2d at 1119.  A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. There is a federal question if the case arises under the Constitution, laws, or treaties of the United States. See 28 U.S.C. § 1331. Whether a case arises under a federal law is determined by the "well-

pleaded complaint rule," <u>Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.</u>, 463 U.S. 1, 9 (1983), specifically, when "a federal question is presented on the face of the plaintiff's properly pleaded complaint."   <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. at 392 (citing <u>Gully v. First National Bank</u>, 299 U.S. at 112-113).   This determination is made by examining the plaintiff's complaint, "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."   <u>Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.</u>, 463 U.S. at 10 (citing <u>Taylor v. Anderson</u>, 234 U.S. 74, 75-76 (1914)).   The Supreme Court of the United States has further limited subject-matter jurisdiction by requiring that the federal law relied on in the plaintiff's complaint creates a private cause of action. <u>See</u> <u>id.</u> at 25-26.   The Supreme Court has emphasized that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." <u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986).   <u>See</u> <u>Sandoval v. New Mexico Technology Group, L.L.C.</u>, 174 F. Supp. 2d 1224, 1232 n.5 (D.N.M. 2001)(Smith, J.)("<u>Merrell</u> <u>Dow</u> is the controlling law when invoking subject matter jurisdiction" when a right under state law turns on construing federal law).   District courts must exercise "prudence and restraint" when determining whether a federal question is presented by a state cause of action because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." <u>Id.</u> at 810.

In addition to the requirement that the federal question appear on the face of the complaint, "plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" <u>Nicodemus v. Union Pacific Corp.</u>, 318 F.3d 1231, 1235 (10th Cir. 2003)(citing <u>Rice v. Office of Servicemembers' Group Life Ins.</u>, 260 F.3d 1240, 1245 (10th Cir. 2001)).   If the resolution turns on

a substantial question of federal law, the federal question must also be "contested."  Grable & Sons

Metal Products Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 313 (2005).  Finally, the exercise

of federal-question jurisdiction must also be "consistent with congressional judgment about the

sound division of labor between state and federal courts governing the application of § 1331."  542

U.S. at 313.  Particularly, the Court must determine whether recognition of federal-question

jurisdiction will federalize a "garden variety" state-law claim that will result in the judiciary being

bombarded with cases traditionally heard in state courts.  See id. at 318.

## LAW REGARDING SUPPLEMENTAL JURISDICTION

The federal-question requirement does not prohibit the federal courts from ever hearing a

state-law claim.

> Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim
> 'arising under (the) Constitution, the Laws of the United States, and Treaties made,
> or which shall be made, under their Authority * * *, 'U.S.Const., Art. III, s 2, and the
> relationship between that claim and the state claim permits the conclusion that the
> entire action before the court comprises but one constitutional 'case.'  The federal
> claim must have substance sufficient to confer subject matter jurisdiction on the
> court.  Levering & Garrigues Co. v. Morrin, 289 U.S. 103[, 105 (1933)]. The state
> and federal claims must derive from a common nucleus of operative fact.  But if,
> considered without regard to their federal or state character, a plaintiff's claims are
> such that he would ordinarily be expected to try them all in one judicial proceeding,
> then, assuming substantiality of the federal issues, there is power in federal courts
> to hear the whole.

United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).

In considering supplemental state claims, the Tenth Circuit has followed the Supreme

Court's lead in classifying supplemental jurisdiction not as a party's right, but as a matter of judicial

discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165

(10th Cir. 2004)(citing City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997);

United Mine Workers of America v. Gibbs, 383 U.S. at 726).  In circumstances where the

supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1165.   The supplemental jurisdiction statute enumerates four factors that the court should consider in whether to decline jurisdiction:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists. See Mirzai v. State of New Mexico General Services Dept., 506 F. Supp. 2d 767, 779 (D.N.M. 2007); Gudenkauf v. Stauffer Communications, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995).

Nevertheless, where state issues substantially predominate, those claims may be left for resolution by the state tribunal.  See United Mine Workers of America v. Gibbs, 383 U.S. at 726-7; 28 U.S.C. § 1367(c).  In cases in which some of the causes of action in a complaint are removable as claims arising under the original jurisdiction of the federal courts but other causes of action do not and are not independently removable, 28 U.S.C. § 1441(c) provides that "the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." The Supreme Court has held that "the animating principle behind

the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 351 (1988).

### ANALYSIS

Bonadeo's motion to remand was timely.  Nevertheless, the record does not support Bonadeo's contention that the Defendants did not follow the proper removal procedure.  Moreover, the Court has jurisdiction over the case because Bonadeo asserts federal claims.  The Court will therefore deny the motion to remand.

## I.   **THE MOTION TO REMAND WAS TIMELY FILED.**

The Defendants argue that Bonadeo's motion to remand was not timely filed.  While the Defendants filed their notice of removal on September 5, 2008, Bonadeo filed his motion on October 6, 2008.  Congress has determined that a motion to remand must be filed within thirty days after the filing of the notice of removal under section 1446(a).  <u>See</u> 28 U.S.C. § 1447(c).  Although, in the temporal sense, more than thirty days passed before Bonadeo filed his motion to remand, he managed to file his motion within thirty days, as that time limit is understood in the statute.

Rule 6 of the Federal Rules of Civil Procedure provides:

**(a) Computing Time.** The following rules apply in computing any time period specified in these rules or in any local rule, court order, or statute:

> **(1) Day of the Event Excluded.** Exclude the day of the act, event, or default that begins the period.

> **(2) Exclusions from Brief Periods.** Exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days.

> **(3) Last Day.** Include the last day of the period unless it is a Saturday, Sunday, legal holiday, or – if the act to be done is filing a paper in court--a day on which weather or other conditions make the clerk's office inaccessible. When the last day is excluded, the period runs until the end of

> the next day that is not a Saturday, Sunday, legal holiday, or day when the
> clerk's office is inaccessible.

Fed. R. Civ. P. 6 (bold in original).  Thus, in computing the thirty-day time period which the statute

specifies, the Court must omit the day on which the notice of removal was filed.  The first counted

day would therefore be September 6, 2008.  From that day, the thirty-day period would expire on

Sunday, October 5, 2008.  Because Sunday is not counted when it falls on the last day, see Fed. R.

Civ. P. 6(a)(3), the due date for the consent of the other defendants would then be rolled to Monday,

October 6, 2008, which is the date Bonadeo filed his motion to remand.  Bonadeo's motion was

therefore timely filed.

## II.   __THE COURT WILL ADOPT THE LATER-SERVED DEFENDANT RULE__.

The threshold question to deciding whether proper removal procedures were followed is

whether the thirty-day clock began running for removal upon service of the first-served Defendant.

The Court concludes that the more modern, "last-served" rule is more in harmony with the language

of the removal statute, and is a more fair and workable rule.  Under that rule, the clock begins

running on each defendant to either remove a case or join a removal petition when that defendant

receives formal service of process.  The Court therefore finds that the clock for removal begins

running against each defendant on the date that defendant receives formal service of process.

The language of the removal statute is phrased in such a way that it appears to contemplate

only a single defendant:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty
> days after the receipt by the defendant, through service or otherwise, of a copy of the
> initial pleading setting forth the claim for relief upon which such action or
> proceeding is based, or within thirty days after the service of summons upon the
> defendant if such initial pleading has then been filed in court and is not required to
> be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  The Court believes that the text is more harmonious with the "last-served"

-17-

rule.  First of all, the statute give "the defendant" the right to remand, suggesting that it is a right each defendant has.  Second, to adopt the traditional rule, the Court would be required to read language into the statute.  Namely, the phrase "first-served" would have to be implied.  On the other hand, there is no need to imply any new language into the statute to apply the last-served rule.  As the statute states, "the defendant" has thirty days.  28 U.S.C. § 1446(b).  A later-served defendant following the statute literally could reasonably conclude that she has thirty days.  The statute does not alert the later-served defendant to the possibility that its clock began running when earlier-served defendants received service of process.

The Court also finds the policy and practical considerations underlying the "last-served" rule to be more persuasive than the considerations underlying the traditional rule.  The traditional rule is largely rooted in three rationales: (i) the rule of unanimity; (ii) the need to strictly construe removal statutes in favor of remand; and (iii) the policy behind 28 U.S.C. § 1446 (b) of ensuring that the question of where a case is to be litigated is determined as soon as possible.  See 16 J. Moore, supra § 107.30[3][a], at 107-190.23 ("The traditional, first-served defendant rule is predicated on the 'unanimity rule,' which requires that all served defendants consent to and join in the notice of removal within 30 days."); id. ("[R]emoval statutes are strictly construed against removal . . . . Second, the purpose of the time limits in Section 1446 is to ensure that the question of where the case will be litigated be put to rest as soon as possible."); Getty Oil v. Insurance Co. of North America, 841 F.2d 1254, 1262-63.

The Court, however, does not see it as self-evident that the last-served rule seriously undermines the three stated policies supporting the first-served rule.  Regarding unanimity, if a later-served defendant desires to remove a case, that defendant must still comply with the unanimity requirement.  Rather than assuming that earlier-served defendants who declined to remove the case

-18-

oppose removal, the Court can envision situations where earlier-served parties are indifferent to whether they litigate in a state or federal forum, but where some later-served defendant sees it as important to remove.  In such a case, the later-served defendant should still be capable of seeking and obtaining the consent of the other defendants, thus satisfying the unanimity rule.

This scenario also underscores an important inequity that the first-served rule brings about: the first-served rule gives plaintiffs desiring to defeat removal an unfair tactical advantage, because it allows them to first serve parties whom they calculate will be less likely to remove, and then to delay service on defendants who might desire to remove the case until later – possibly even until thirty days after service upon the first-served defendant was completed.  Such gamesmanship is a realistic possibility, and its potential existence counsel against the first-served defendant rule.

The Court agrees that it has traditionally been the practice of federal courts to strictly construe removal statutes.  At the same time, decisions such as <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u> illustrate that, at times, practical considerations might override strict construction of the removal statute.  The Supreme Court in <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc</u> faced the question whether a named defendant must receive official summons to appear in an action before the time to remove begins to run. Specifically, the issue was whether the thirty-day period started earlier, on the named defendant's receipt, before service of official process, of a "courtesy copy" of the filed complaint sent by facsimile transmission by counsel for the plaintiff.  526 U.S. at 347. The Supreme Court noted that "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." <u>Id.</u> at 350.  In light of that principle, Supreme Court held that service of process was a prerequisite to the removal clock's running.  <u>See</u> <u>id.</u> at 356.

The Supreme Court's holding in <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u> arguably

ran counter to a strict construction of the text of the removal statute it was interpreting, which states: "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, <u>through service or otherwise</u>, of a copy of the initial pleading setting forth the claim."  28 U.S.C. § 1446(b) (emphasis added).  To reach its holding in <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, the Supreme Court arguably had to take the phrase "through service or otherwise," written in the disjunctive as it is, and, at a minimum, to transform the "or" into an "and."

Thus, even where strict construction of the text might compel one result, the Supreme Court in <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u> indicated that it is sometimes proper for a court interpreting unclear language in the removal statute to look at congressional intent and practical considerations which might militate against a strict, anti-removal construction.  Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.  In this case, the Court believes the practicalities that convince the Court of the last-served defendant rule's superiority are harmonious with the text of the removal statute.  There is, therefore, in light of <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, a compelling argument in favor of that rule.

The Court also notes that the "bedrock principle" articulated in  <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u> – that a named defendant is not obligated to engage in litigation unless notified through formal service of process – supports the Court's adoption of the last-served defendant rule.  The first-served defendant rule, if applied strictly, would allow the time-limit for removal to slip by before some defendants are served with formal process.  Thus, a result would obtain which the Supreme Court has expressly disapproved: the rule would "render removal the sole

-20-

instance in which one's procedural rights slip away before service of a summons, i.e., before one is subject to any court's authority." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. at 356.

To mitigate such a result, some courts have suggested that an exception should apply to defendants who are served after the thirty-day clock runs on the first-served defendant.  See ITT Comm'l. Credit Corp. v. Hotel Dev. Corp., No. Civ. 91-634 M, Memorandum Opinion and Order (D.N.M. 1991)(citing Moody v. Commercial Ins. Co., 753 F.Supp. 198, 200 (N.D. Tex. 1990)). While such an exception is helpful, it does not resolve other inequities that the first-served defendant rule occasions.  For example, it might occur that a later-served defendant receives service the day before the removal deadline runs on the first-served defendant.  In discussing the related issue of how much time a later-served defendant has to join a removal petition, the Fourth Circuit noted that, if the clock were to run from the time first-served defendant received formal service of process,

> the rights of defendants generally could be rather easily overcome by tactical maneuvering by plaintiffs. Suppose, for example, plaintiff serves defendant A, thus starting the thirty – day period running, and then maneuvers to serve defendant B late on the thirtieth day. Obviously B is unlikely to rush to the courthouse door before it closes to file his joinder of A's removal petition; he is unlikely to even realize what is happening to him before it is too late. (There is nothing on the summons form such a defendant would receive – which of course would be a summons to state, not federal, court – that would tell him the rules for removal to federal court, or warn him that he might have much less than thirty days to join in a removal petition). This cannot be what Congress had in mind. Congress created the removal process to protect defendants. It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.

McKinney v. Board of Trustees of Mayland Community College, 955 F.2d at 928.  The Third Circuit in McKinney v. Board of Trustees of Mayland Community College also noted that

> Congress amended section 1446(a) to make petitions for removal subject to Rule 11 of the Federal Rules of Civil Procedure. Judicial Improvements and Access to Justice Act, Pub.L. No. 100-702, § 1016(b), 102 Stat. 4669 (1988). As amended, section 1446(a) is further reason to allow all defendants a full thirty days to investigate the

> appropriateness of removal. Otherwise, later served defendants will either have to forego removal or join hurriedly in a petition for removal and face possible Rule 11 sanctions. Congress surely did not intend to impose such a Hobson's choice on later served defendants.

McKinney v. Board of Trustees of Mayland Community College, 955 F.2d at 928.

The specific issue in McKinney v. Board of Trustees of Mayland Community College was when later-served defendants must join an already filed notice of removal.  See id.  This question, however, is closely tied with the operation of the right to removal.  In situations where all defendants are simultaneously served, it follows from the rule of unanimity that, because the notice of removal must be filed within thirty days, and because all defendants must join it, there is an effective thirty-day deadline to consent to removal.  If one defendant fails to consent within the thirty days, removal is destroyed because there is no unanimity.

Just as in right-to-removal cases, however, complications arise when a defendant receives service later.  The Fourth Circuit in McKinney v. Board of Trustees of Mayland Community College laid out a convincing rationale for allowing each defendant thirty days from the time she receives service to join a notice of removal.  In doing so, the Fourth Circuit rejected the rule that would start the clock running against all defendants when the first-served defendant received service of process. See 955 F.2d at 928.

The Court believes that, although the Fourth Circuit in  McKinney v. Board of Trustees of Mayland Community College does not discuss the issue, its analysis – which is persuasive – lends support to the proposition that the best approach is to adopt the last-served defendant rule, and to construe that rule to accomplish two things: (i) allow later-served defendants to file a notice of removal within thirty days of receiving service of process if their case is removed, even if time may have run on a previously-served defendant to do so; and (ii) allow later-served defendants thirty days

from the time of service of process to join a notice of removal that is already filed at the time the later-served defendants receive service of process.

First of all, the same textual, policy, and practical implications are at play in either case. Congress provides "the defendant" with a right to remove cases to federal court. 28 U.S.C. § 1446(b). A party exercises that right to removal by following the statutorily prescribed procedures, including either filing a notice of removal, or joining one. If a later-served defendant wishes to remove a case where earlier-served defendants have failed to do so, but would not be opposed to joining the later-served defendant's notice of removal, the first-served defendant rule would infringe on the later-served defendant's right to removal in an undesirable way. Similarly, if a later-served defendant wishes to be in federal court and therefore wishes to join an already filed notice of removal, a first-served defendant rule requiring the clock to run on joining a notice of removal from the date of service of the first-served defendant would also have an undesirable impact on the right to removal.

The possible unfairness that the Fourth Circuit in <u>McKinney v. Board of Trustees of Mayland Community College</u> points out applies equally to situations where late-served defendants wish to remove a case, and find that they have little or no time to investigate the appropriateness of removal. That a court may award attorney's fees for an improper removal also makes it important to avoid forcing defendants to make rushed, ill-informed decisions regarding the propriety of either joining or initiating removal.

Second, the Court believes that a unified rule which starts the clock for filing or joining a notice of removal against each defendant from the date she is served is most workable in light of the removal statute and the rule of unanimity. The rule of unanimity states that, generally, all defendants must join a notice of removal. Courts do not, however, require defendants who have not

been served to join the removal petition.  See J. Moore, supra § 107.11[1][d], at 107-140 (citing Salveson v. Western States Bankcard Ass'n, 731 F.2d at 1429; P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co., 395 F.2d at 547-48; and Adams v. Lederle Labs., 569 F. Supp. 234, at 246).  Thus, if some defendants are served and then remove the case, despite the existence of unserved defendants, unanimity will be preserved – at least until others are served.  The Court is not aware of case law discussing, however, how the unanimity requirement should be handled if, after the filing of a notice of removal, another defendant receives service of process.  The Court believes, however, that an effective approach is one that preserves the function of the unanimity rule while also protecting parties who have not received service of process.  A last-served defendant rule which applies to filing or joining a notice of removal strikes the right balance.  If a later-served defendant does not join the removal petition, the Court may have to wait until all are served to determine if all have joined.[3]

Each defendant has right to removal and a right to veto removal.  The right to removal is reflected in 28 U.S.C. § 1446(b).  The right to veto removal extends, in part, from the unanimity requirement, given that any served defendant has the ability to defeat removal by declining to consent.  Moreover, 28 U.S.C. § 1448 states: "This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case."  Id.  That defendants have a statutorily recognized right to remand strengthens the proposition that they have the right to veto removal.

If a later-served defendant receives service while a notice of removal is pending, the rule of unanimity would be undercut if courts allowed the removal to proceed even without the consent of

---

[3] This rule also encourages plaintiffs to promptly serve all named defendants in a multi-defendant case, rather than naming many defendants and only serving some.

a served defendant.  Removal should not proceed if that party's consent cannot be obtained.  This scenario leaves the question, however, how much time removing defendants – and plaintiffs, for that matter – have to wait to find out whether the case is removable.  If the plaintiff staggers service, and drags it out as long as possible under the rules, there is always the lurking possibility that, although the notice of removal has been filed and all served defendants have joined, the plaintiff might serve another defendant at a later date, suddenly destroying unanimity.  There should therefore be some cut off to preserve the intent of the thirty-day deadline in 28 U.S.C. § 1446(b), which is to assure that a determination is made as soon as possible where the litigation will proceed.  See 16 J. Moore, supra § 107.30[3][a], at 107-190.23.

In light of these considerations, the better approach is to give each defendant control over the defendant's right to either join or veto removal, and to apply the statutory deadline on an individual basis.  Thus, when a defendant receives service of process, that defendant has thirty days to file a notice of removal if one has not been filed, or the defendant has thirty days to join a notice of removal that has already been filed.  In that fashion, the rule of unanimity will be preserved, and the case will not be removable if a served defendant refuses.  At the same time, defendants will have the benefit of the statute's deadline and will only see their procedural rights affected after they have received service of process.  Finally, this approach will preserve the purpose of the thirty-day deadline by giving the defendants a definitive time limit by which they may remove, consent to remove, or withhold their consent to remove a case.[4]

The Court is cognizant of the possibility that this approach might leave the door open for

---

[4] While the last-served defendant rule for when a notice of removal must be filed is derived from the statute's language, and the Court must ground any rule first and foremost in Congress' language, the unanimity rule is more of a court-made rule, and the Court has more flexibility in crafting a rule that works well.

some plaintiffs to engage in gamesmanship in limited circumstances.  For example, if a plaintiff files suit against ten defendants, and serves only nine of them, the nine could remove the case.  If, many months after removal, things go badly for the plaintiff in federal court, and if the court has not managed its docket to see to it that named defendants are either served or dismissed from the case, the Court can imagine a plaintiff colluding with the unserved defendant and serving that defendant under an agreement that the last-served defendant will then decline to consent to removal.  In the Court's view, such a scenario will be rare, and a court can normally avoid it altogether by managing its docket effectively and prodding the plaintiff to assure that all defendants are served.

The United States Court of Appeals for the Eleventh Circuit, in adopting the last-served defendant rule, has reasoned that "the trend in recent case law favors the last-served defendant rule." Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d at 1205.  According to the Eleventh Circuit's opinion in Bailey v. Janssen Pharmaceutica, Inc., which issued in 2008, the most recent decision endorsing the first-served defendant rule was more than fifteen-years-old, while the two most recent circuit decisions endorsing the last-served defendant rule came in 2001 and 1999.  The Eleventh Circuit's decision, which came out in 2008, contributes to the modern trend.  The Court also notes that the circuit-court opinions embracing the first-served defendant rule all predate Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.  It is possible that Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc. catalyzed the move toward the last-served defendant rule with its emphasis on the need for formal process.  The Supreme Court's decision in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc. at least makes the last-served defendant rule more compelling.   See Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d at 1207-08.


**III.      THE CASE WAS PROPERLY REMOVED TO FEDERAL COURT.**

Proper removal requires that the removing parties follow the statutorily prescribed procedures.  Moreover, removal is proper only where the federal court would have original jurisdiction over the action.  See 28 U.S.C. §1441.  In this case, the Court finds that both requirements are met and that removal was therefore proper.

### A.    THE PROPER PROCEDURES WERE FOLLOWED IN REMOVING THE CASE.

Bonadeo asserts that consent by all Defendants to this removal did not timely occur. Bonadeo filed his Complaint in the state district court on August 15, 2008.  Lujan, Trujillo, Rodella, and Park filed their Notice of Removal on September 5, 2008.  Bonadeo does not specify the dates on which any of the parties were served except Bonal, who was served on January 6, 2009.  Bonadeo urges the Court, however,  to consider September 5, 2008 as the date of service on Lujan, Trujillo, Rodella, and Park.  His argument, although not explicitly couched in such terms, is that those Defendants waived service of process by filing the Notice of Removal.  Bonadeo also argues – also under an apparent theory of waiver – that the other defendants, with the exception of Bonal, should be considered served on October 6, 2008, because their attorney filed a notice of appearance and filed responses to some of the motions.  Bonadeo argues that Lujan, Trujillo, Rodella, and Park should have obtained the other Defendants' consent to removal within thirty days of September 5, 2008.  Because those later served-Defendants did not file their notice of consent to removal until October 8, 2008, Bonadeo argues that the filing was untimely and that removal is therefore defective.

There is no proof in the court records that the Defendants, other than Bonal, have been served.  The court record does not reflect that any of the Defendants had been served as of September 10, 2008, despite pleadings having been filed.  Nothing has been presented to the court

to show that service occurred or when it occurred.

Instead of providing the Court with the dates of service, or providing proof of service, Bonadeo refers to dates on which counsel for the Defendants filed documents as dates indicating that the Defendants knew about the Complaint.  Bonadeo asserts that "all parties with the exception of Bonal were served through their attorneys who have been working on behalf of their clients, in the federal forum at least, since approximately September 5, 2008 for the so-called 'State Defendants' and since October 6 for the so-called 'Wholesaler Defendants.'"  Reply at 2.

Even if the Court assumes that, despite the lack of proof of service of process, the action by the later-served Defendants constitutes a waiver of service, and that September 5, 2008 should be assumed as the date of service, removal was still proper.  Without any proof in the record of service of process on the other Defendants, whose consent was required for removal, the earliest possible date of service that has been suggested is October 6, 2008 – the date Bonadeo has asserted.  Given that the Court has adopted the last-served defendant rule, these later-served Defendants had thirty days from the date they received service of process to assent to removal.  Given their October 8, 2008 filing of their notice of consent to removal, these Defendants were within the thirty-day deadline, for which the clock began running against them on October 6, 2008.  The later-served Defendants' filing, was, in fact, rather prompt.  Bonal was admittedly not served with process until January 6, 2009, and, therefore, his consent was not required.[5]  See Moore's supra § 107.11[1][d], at 107-140 and citations.  All of the necessary consents were obtained within the required time frame.[6]  There was no defect in the removal procedure.

---

[5]Bonal filed his Notice of Consent To Removal on January 12, 2009.

[6]The unknown Does have not yet been determined and not yet served.  Accordingly, their consent is not relevant to this decision.  See Moore's supra § 107.11[1][d], at 107-140.

This case illustrates the wisdom of the last-served defendant rule.  Using Bonadeo's date of October 6, 2008 to calculate the date upon which the later-served Defendants received service of process, those later-served Defendants were not served until day thirty, as calculated from the date of service on the first-served Defendants.  Under the first-served defendant rule, the later-served Defendants in this case received service on the last day in which it would be possible to remove or consent to removal.  They would have had almost no time to investigate the propriety of removal.  If they were to make a rushed choice to avoid losing the chance at removal, they would face the risk of sanctions under rule 11 and possibly an award of attorney's fees to Bonadeo.  See McKinney v. Board of Trustees of Mayland Community College, 955 F.2d at 928.

**B.  THE FEDERAL COURT HAS JURISDICTION.**

Bonadeo asserts that his case lacks a federal question.  See Doc. 18 at 5. In their petition for removal, the Defendants assert federal-court jurisdiction over the parties and claims pursuant to 28 U.S.C. § 1331, i.e., claims arising under the Constitution and laws of the United States.  Bonadeo focuses his argument that the federal court does not have jurisdiction around his citation of 42 U.S.C. §1983.  42 U.S.C. §1983 is not the only federal statute to which Bonadeo cited.  Bonadeo did not cite only one federal law in his complaint.   Bonadeo has made multiple allegations of violations of federal law, including: (i) civil conspiracy that prevented him from exercising his civil rights under 18 U.S.C. § 241, 42 U.S.C. § 1983, and 42 U.S.C. 1985(3), see Complaint ¶ 49, at 12; (ii) civil liability for violation of his civil rights under the due-process guarantees of the federal constitution, see Complaint ¶¶ 66-73, 15-16; and (iii) civil liability for engaging in and acting as a racketeering influenced and corrupt organization under 18 U.S.C. §1962, see Complaint ¶¶ 74-80, at 16-17.  Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  Based on the face of Bonadeo's

Complaint, removal to federal court was proper.

Of course, Bonadeo is master of his Complaint.  If he does not want to be in federal court, he could dismiss all his federal claims.  If there are no federal claims remaining, the Court is likely to remand the remaining state-law claims.  See 28 U.S.C. §1367(c) (noting that, when deciding whether to decline to exercise supplemental jurisdiction, a court should consider whether it "has dismissed all claims over which it has original jurisdiction").

Bonadeo requests that all issues in which state law predominates be remanded back to the state court.  Bonadeo's Complaint, however, does not have a predominate state claim.  In his Complaint, other than his allegation of tortious interference with contract, Bonadeo's allegations emphasize the federal law violations and include specific statutory cites.  State laws were only vaguely mentioned.  Further, the facts of Bonadeo's Complaint cannot be separated into those which apply to the tortious interference of contract and those which apply to the other allegations.  There is no separate and independent incident. One long chain of events culminated in Bonadeo's multiple allegations.  All of his claims are based upon a common nucleus of operative fact. Accordingly, the Court retains supplemental jurisdiction over the related state claim.

The Court therefore concludes that this matter was properly removed to federal court.  The removal was procedurally sound and the Court has jurisdiction, including supplemental jurisdiction over the state-law claim.  Accordingly, the Court will deny Bonadeo's motion to remand.

## IV.    **THE COURT WILL NOT AWARD FEES AND COSTS**.

All parties have requested attorney's fees.  Because the removal was proper, Bonadeo would not be entitled to any fees and costs, especially attorney's fee.  "Absent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis

exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Bonadeo did not prevail on his motion to remand and the Court has retained jurisdiction over this matter.  Bonadeo is therefore not entitled to fees and costs.

At the same time, the Defendants have not explained why the Court should deviate from American rule to award them fees.  The Defendants point to no constitutional or statutory basis for fee shifting.  The Defendants have not asked for rule 11 sanctions, and if they had, the Court does not believe such sanctions would be proper in this motion.  Bonadeo is representing himself pro se. There is no indication that he filed his motion frivolously or in bad faith.  The Court therefore concludes that an award of costs or fees is not warranted.

**IT IS ORDERED** that Plaintiff Robert Bonadeo's Motion to Remand and For Costs on the Grounds of Defective Removal and Lack of Federal Question or, in the Alternative, to Remand All Claims in Which State Law Predominates is denied.  The Court will also deny the requests for costs and fees.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel of Record:*

Robert Bonadeo
Post Office Box 22114
Santa Fe, New Mexico 87502

    *Plaintiff Pro Se*

Luis E. Robles
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Ben Lujan, Jim Trujillo, Deborah Rodella, and Al Park*

Michael J. Cardigan
Cadigan Law Firm, P.C.
Albuquerque, New Mexico

*Attorneys for Defendants Fred O'Cheskey, Maloof Companies, New Mexico Alcohol
    Beverage Wholesalers Association and Southern Wine and Spirits of New Mexico*

Mark T. Baker
Long, Pound & Komer, P.A.
Santa Fe, New Mexico

*Attorneys for Defendant Maurice Bonal*