# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROBERT BONADEO, an individual,

    Plaintiff,

vs.                                                                  No. CIV 08-0812 JB/ACT

BEN LUJAN, SPEAKER OF THE HOUSE OF
REPRESENTATIVES OF THE STATE OF NEW
MEXICO, in his personal and/or representative
capacities; JIM TRUJILLO, STATE OF NEW MEXICO
REPRESENTATIVE, in his personal and/or representative
capacities; DEBORAH RODELLA, STATE OF NEW
MEXICO REPRESENTATIVE, in her personal and/or
representative capacities; AL PARK, STATE OF NEW
MEXICO REPRESENTATIVE, in his personal and/or
representative capacities; FRED O'CHESKEY, LOBBYIST,
in his personal and professional capacities; MAURICE
BONAL, LOBBYIST, in his personal and professional
capacities; MALOOF COMPANIES, a New Mexico
corporation; NEW MEXICO ALCOHOL BEVERAGE
WHOLESALERS ASSOCIATION, a non-profit corporation
operating under the laws of the State of New Mexico;
SOUTHERN WINE AND SPIRITS OF NEW MEXICO,
a New Mexico corporation; and DOES 1-20, inclusive,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the State Defendants' Motion to Dismiss

No. I: Dismissal of All Claims Based on Absolute Immunity, or in the Alternative, Dismissal of All

Federal Constitutional Claims Based on Qualified Immunity, filed September 22, 2008 (Doc. 9); (ii)

the State Defendants' Motion to Dismiss No. II: Dismissal of Plaintiff's Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1962, and Tortious Interference with Contractual Relations

Claims, filed September 22, 2008 (Doc. 10); (iii) the State Defendants' Motion to Dismiss No. III:

Dismissal of Bonadeo's Civil Conspiracy and State Constitutional Claims, filed September 22, 2008 (Doc. 11); (iv) Defendants Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits Motion to Dismiss, filed October 9, 2008 (Doc. 21); (v) Plaintiff Robert Bonadeo's Motion Seeking Leave of the Court to File Untimely Motion for Extension of Time to File Response to Defendants' O'Cheskey, Maloof Companies, New Mexico Alcohol and Beverage Wholesales Association and Southern Wine and Spirits' Motion to Dismiss and Memorandum in Support, filed November 17, 2008 (Doc. 38); (vi) Bonadeo's Motion Seeking Leave of the Court to File Untimely Motion for Further Extension of Time to File Response to Defendant's Motions to Dismiss, filed December 29, 2008 (Doc. 43); and (vii) Maurice Bonal's Motion to Dismiss, filed January 9, 2009 (Doc. 51). The Court will grant Bonadeo's request for an extension of time to respond to some of the motions. Because Bonadeo has not timely responded to many of these motions, despite other extensions of deadlines by the Court, because he has, under the local rules, effectively consented to the Defendants' motions to dismiss, and because Bonadeo's Complaint fails to state a claim upon which relief can be granted, the Court will grant the Defendants' motions in part and will dismiss all of Bonadeo's federal claims. The Court will remand the remaining state claims, and this case, to state court.

## FACTUAL BACKGROUND

Bonadeo is a resident of Santa Fe County, State of New Mexico. All of the known Defendants are individuals who reside in the State of New Mexico, or are entities who are incorporated or are authorized to do business in New Mexico. Bonadeo has not ascertained the residency and identities of the unknown Does.

The facts as described by Bonadeo in his Complaint are as follows:

Bonadeo had made arrangements with The Santa Fe Brewing Company, in Santa Fe, New

Mexico, to begin, on its property, the operation of a small local microdistillery, which would manufacture and sell on-site small quantities of micro-distilled liquor and spirits. On or about February 2007, Bonadeo authored Senate Bill 1071, "SMALL LIQUOR DISTILLER LICENSES," which would permit the manufacture and on-site sale of micro-distilled liquor and spirits. Bonadeo worded SB 1071 similar to the existing law for small wineries and small breweries. See  NMSA 1978 § 60-6A-21.

State senator John Grubesic sponsored SB 1071.  The Senate Corporations and Transportation Committee and Senate Judiciary Committee passed SB 1071.

Bonadeo believes that Defendant Maurice Bonal is a lobbyist for some of the major alcoholic-beverage interests in New Mexico.  Bonadeo believes that Defendant Fred O'Cheskey is a lobbyist for Defendant Maloof Companies, Southern Wine and Spirits, and the New Mexico Alcohol Beverage Wholesalers Association.  In February 2007,  Bonadeo overheard O'Cheskey talking with another person.  It appeared to Bonadeo that the two individuals were opposed to SB 1071.  Bonal bragged to Bonadeo that, if he "were against [Bonadeo's] bills, it wouldn't even get out of committee."  Plaintiff's Complaint for Damages ¶ 31, at 7, filed in federal court September 5, 2008 (Doc. 1-2)("Complaint").

During the legislative session, Bonal and Bonadeo talked about SB 1071. Bonadeo believed that Bonal supported SB 1071.  The House Judiciary Committee passed SB 1071.  The House Business and Industry Committee initially tabled SB 1071 because of objections by Jim Trujillo. See Complaint ¶ 33, at 8.  Later that same day, when Trujillo was absent, SB 1071 passed in that committee.

Bonadeo believes that the following day, when Trujillo learned that SB 1071 had passed, Trujillo threatened Defendant Deborah Rodella, Chair of the House Business and Industry

Committee, that he would resign from her committee if SB 1071 was made law.  See Complaint ¶ 35, at 8.  As a result, a deal was made between Defendant Trujillo, Defendant Ben Lujan, Defendant Al Park, and Defendant Rodella that Lujan would make a motion to send SB 1071 back to the House Business and Industry Committee when SB 1071 came up on the agenda for a vote on the floor.  See Complaint ¶ 35, at 9.

On or about Friday, March 16, 2007, which was the last full day of the legislative session, SB 1071 was directed to the House of Representatives for a vote on the House floor.  About an hour before SB 1071 was expected on the house floor, Bonadeo heard from several sources that a deal had been made between Trujillo and Lujan that Lujan would refuse to bring SB 1071 to the House floor for vote.  See Complaint ¶ 36, at 9.  Bonadeo then talked with Park, "who had promised to carry SB 1071 through the House."  Complaint ¶ 37, at 9-10).  During this discussion, Bonadeo believed that Park made some false statements to him and stated so to Park.  Park then attempted to assault Bonadeo.  See id. ¶ 37 at 10.

When SB 1071 was called for vote, Lujan acted to send SB 1071 back to the House Business and Industry Committee, but on a Representative's[1] objection, SB 1071 was instead placed as item #1 on the next day's agenda.  See Complaint ¶ 39, at 10.  The next day, Lujan did not open SB 1071 for a vote.  The legislative session ended without SB 1071 being passed.

## PROCEDURAL BACKGROUND

On August 15, 2008, Bonadeo filed Plaintiff's Complaint for Damages with the First Judicial District Court for the State of New Mexico, County of Santa Fe as cause CV-2008-02280.  See Doc. 1-2.  On September 5, 2008, Lujan, Trujillo, Rodella and Park filed a Notice of Removal of the

---

[1]The specific Representative was not identified in the documents.

matter to federal court.  <u>See</u> Doc 1.  On September 11, 2008, Lujan, Trujillo, Rodella and Park filed the State Defendants' Answer to Complaint for Damages.  <u>See</u> Doc. 5.

On September 22, 2008, Lujan, Trujillo, Rodella, and Park filed: (i) the State Defendants' Motion to Dismiss No. I: Dismissal of All Claims Based on Absolute Immunity, or in the Alternative, Dismissal of All Federal Constitutional Claims Based on Qualified Immunity, <u>see</u> Doc. 9; (ii) the State Defendants' Motion to Dismiss No. II: Dismissal of Plaintiff's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and Tortious Interference with Contractual Relations Claims, <u>see</u> Doc. 10; (iii) the State Defendants' Motion to Dismiss No. III: Dismissal of Bonadeo's Civil Conspiracy and State Constitutional Claims, <u>see</u> Doc. 11; and (iv) the State Defendants' Motion for Protective Order Staying Discovery Until The Court Rules on States Defendants' Dispositive Motions, <u>see</u> Doc. 12.   On October 6, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits joined in Lujan, Trujillo, Rodella and Park's Motion for Protective Order Staying Discovery (Doc. 12) and filed Defendants Fred O'Cheskey, Maloof  Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Response to State Defendants' Motion for Protective Order Staying Discovery Until the Court Rules on State Defendants' Dispositive Motions, <u>see</u> Doc. 14.  Also on October 6, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits joined in Lujan, Trujillo, Rodella and Park's first three motions to dismiss and filed: (i)  Defendants Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Response to State Defendants' Motion to Dismiss No. I: Dismissal of All Claims Based on Absolute Immunity, or in the Alternative, Dismissal of All Federal Constitutional Claims Based on Qualified Immunity, <u>see</u> Doc. 15; (ii) Defendants Fred O'Cheskey, Maloof Companies, New Mexico

Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Response to State Defendants' Motion to Dismiss No. II: Dismissal of Plaintiff's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and Tortious Interference with Contractual Relations Claims, <u>see</u> Doc. 16; and (iii)  Defendants Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Response to State Defendants' Motion to Dismiss No. III: Dismissal of Bonadeo's Civil Conspiracy and State Constitutional Claims, <u>see</u> Doc. 17.

On October 6, 2008, Bonadeo filed a Motion to Remand and for Costs on the Grounds of Defective Removal and Lack of Federal Question or, in the Alternative, to Remand All Claims in Which State Law Predominates, <u>see</u> Doc. 18, and Plaintiff's Motion to Extend Time to File Response [sic] to Defendants' Motions to Dismiss, <u>see</u> Doc. 19.  The motion to extend was unopposed.  On October 8, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits filed their Notice of Consent to Removal. <u>See</u> Doc. 20.

On October 9, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits filed Defendants' Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Motion to Dismiss, <u>see</u> Doc. 21, along with Defendant Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Memorandum in Support of Their Motion to Dismiss, <u>see</u> Doc. 22, asserting that Bonadeo's Complaint fails to state a claim against them upon which relief can be granted.  On October 14, 2008, the Honorable Judith C. Herrera, United States District Court Judge, extended the deadline for Bonadeo to file responses to the motions to dismiss to November 5, 2008, <u>see</u> Doc. 23.  On

October 27, 2008, Lujan, Trujillo, Rodella and Park filed their Response to Motion for Remand. See Doc. 24.

On October 28, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association, and Southern Wine and Spirits filed Defendants Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association, and Southern Wine and Spirits' Response to Motion to Remand. See Doc. 25. On October 30, 3008, the Honorable Alan C. Torgerson, United States Magistrate Judge, granted Lujan, Trujillo, Rodella and Park's motion to stay discovery pending a decision on the State Defendant's Motion to Dismiss No. I. See Doc. 26. On November 4, 2008, Bonadeo filed Plaintiff's Motion for Further Extension of Time to File Response to Defendants' Motions to Dismiss, Documents No. 9-11, see Doc. 27, requesting an extension of time to respond to the motions to dismiss from November 5, 2008 until 45 days after an Order is entered by the Court on his Motion to Remand to State Court, see Doc. 27 at 2. On November 7, 2008, Bonadeo filed Plaintiff's Motion Seeking Leave of the Court to File an Untimely Amendment to Plaintiff's Motion for Further Extension of Time to File Resonse [sic] to Defendants' Motions to Dismiss, see Doc. 31, which requested 30 additional days to respond to the motions to dismiss. On November 7, 2008, Bonadeo also filed Plaintiff's Motion to Strike Defendants Lujan, Trujillo, Rodella and Parks' Notice(s) of Completion of Briefing or, in the Alternative, to Delay Hearing on Defendants Lujan, Trujillo, Rodella and Park's Motions to Dismiss I-III Until 45 Days After an Order is Issued on Plaintiff's Motion for Remand to State Court. See Doc. 32.

On November 11, 2008, Lujan, Trujillo, Rodella and Park filed the State Defendants' Response to Plaintiff's Motion Seeking Leave of the Court to File an Untimely Amendment to Plaintiff's Motion for Further Extension of Time to File Response to Defendants' Motions to Dismiss [Docket No. 31]. See Doc. 33. In their motion, Lujan, Trujillo, Rodella and Park requested

attorney's fees in bringing their motion.  On November 12, 2008, Lujan, Trujillo, Rodella and Park filed the State Defendants' Response to Plaintiff's Motion for Further Extension of Time to File Response to Defendants' Motions to Dismiss, Document Nos. 9-11 [Docket No. 27], <u>see</u> Doc. 34, and the State Defendants' Response to Plaintiff's Motion to Strike Defendants Lujan, Trujillo, Rodella and Parks' Notices of Completion of Briefing or, in the Alternative, to Delay Hearing on Defendants Lujan, Trujillo, Rodella and Park's Motions to Dismiss I-III Until 45 Days After an Order is Issued on Plaintiff's Motion for Remand to State Court [Docket No. 32], <u>see</u> Doc. 35.  In their responses, Lujan Trujillo, Rodella and Park request attorney's fees.

On November 13, 2008, Bonadeo filed Plaintiff's Reply to Defendants' Response to Motion to Remand to State Court and for Costs.  <u>See</u> Doc. 36.  On November 17, 2008, Bonadeo filed a Motion Seeking Leave of the Court to File Untimely Motion for Extension of Time to File Response to Defendants' O'Cheskey, Maloof Companies, New Mexico Alcohol and Beverage Wholesalers Association and Southern Wine and Spirits' Motion to Dismiss and Memorandum in Support, <u>see</u> Doc. 38, requesting an unspecified extension to file his response to those Defendants' motion citing tardy service of the motion and the need for him to author and file seven motions during the same time period.  On November 25, 2008, the Honorable Alan C. Torgerson, United States Magistrate Judge, denied Bonadeo's request for an extension of time to respond to Lujan, Trujillo, Rodella and Park's motions to dismiss based on the court's ruling on other motions, <u>see</u> Doc. 27, but, based on Plaintiff's Motion to File Untimely Amendment, <u>see</u> Doc. 31, granted Bonadeo an extension until December 15, 2008 to respond to the three motions to dismiss, <u>see</u> Doc. 39.[2]  Judge Torgerson

_____

[2] In that Order, Judge Torgerson stated: "The Court, not the Plaintiff, will determine the orderly progress of this case.  Thus, Plaintiff's Motion for Further Extension will be denied.  The Court will grant Plaintiff's Motion to File Untimely Amendment to the extent it will allow Plaintiff until December 15, 2008, to respond to the State Defendants' three motions to dismiss. . . ."  Doc.

further denied Bonadeo's motion to strike, <u>see</u> Doc. 32, as moot.  <u>See</u> Doc. 39 at 3.  On December 12, 2008, Bonadeo filed Plaintiff's Motion for Imposition of Rule 11 Sanctions.  <u>See</u> Doc. 41.  On December 23, 2008, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits filed Defendants' [sic] Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits' Response to Plaintiff's Motion for Rule 11 Sanctions.  <u>See</u> Doc. 42.  On December 29, 2008, Bonadeo filed his Motion Seeking Leave of the Court to File Untimely Motion for Further Extension of Time to File Response to Defendant's Motions to Dismiss.  <u>See</u> Doc. 43.  As grounds for this motion, Bonadeo cites: "(a) the inaccessibility of the clerk's office because of very frequent and numerous early or complete closings due to weather conditions and holidays between 12/15/08 and 12/29/08) [sic] and because of (b) the Plaintiff's acute illness of long duration (an untreated abscessed [sic] tooth and subsequent related illnesses)."  Doc. 43 ¶1 at 2.  Bonadeo requested a forty-five day extension of time -- from December 15, 2008 to January 29, 2008 [sic] -- to respond to four of the Defendants' motions to dismiss: Doc. 9-11 and Doc. 21.  In the motion, Bonadeo states that he has not had sufficient time to respond to the Defendants' motions because of: (i) the great complexity of the issue; (ii) the extensive nature of the Defendants' motions; (iii) his lack of experience in prosecuting a case; and (iv) his limited access to the public law libraries and other legal resources during non-work hours. <u>See</u> Doc. 43 ¶ 8, at 6.

On December 31, 2008, Lujan, Trujillo, Rodella, and Park filed the State Defendants' Response to Plaintiff's Motion Seeking Leave of the Court to File Untimely Motion for Further Extension of Time to File Response to Defendants' Motion to Dismiss [Docket No. 43].  <u>See</u> Doc.

---

39 at 2.

44.  They argue that granting Bonadeo an open-ended deadline will delay the resolution of the case, particularly with regard to immunity issues.  See Doc. 44 ¶ 9, at 4.  They request that attorney's fees and costs be granted in filing the response.

Bonal was served with the Complaint on January 6, 2009, see Doc. 47 at 2, and he filed his Notice of Consent to Removal on January 12, 2009, see Doc. 53.

On January 9, 2009, Bonal filed Defendant Maurice Bonal's Motion to Dismiss, see Doc. 51, asserting that the Noerr-Pennington doctrine barred Bonadeo's claims and that Bonadeo has not alleged any prohibited "racketeering activity" or any pattern of activity to establish such a claim. On January 12, 2009, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine & Spirits of New Mexico filed Wholesaler Defendants' Response to Plaintiff's Motion Seeking Leave of the Court to File Untimely Motion for Further Extension of Time to File Response to Defendants' Motion to Dismiss [Docket No. 43].  See Docs. 52 and 54. In the Response, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine Sprits of New Mexico assert that Bonadeo states no grounds to justify an extension of time other than that the issues are complex and the law libraries are not open on the weekend.  They request that they be granted their reasonable attorney's fees incurred in responding to Bonadeo's Motion.  See Docs. 52 and 54 at 3.

On April 29, 2009, the Court held a hearing with regard to the pending motions.  Bonadeo did not appear for the hearing.  When the Court called the number for Bonadeo that the Court had for him, the line indicated that his telephone had been disconnected.  The Court confirmed, however, that the notice of the hearing had been sent to him at the address on file with the Court and that the notice had not been returned to the Court.

## STANDARD FOR DECIDING A MOTION TO DISMISS

Pursuant to rule 12(b) of the Federal Rules of Civil Procedures, a motion to dismiss can be granted for numerous reasons, including failure to state a claim upon which relief can be granted. See Fed. R. Civ. P 12(b)(6).  Under rule 12(b)(6),  a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations."  Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)(citing Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969)).  Pro se pleadings are interpreted liberally, see Swoboda v. Dubach, 992 F.2d 286, 289 (10th Cir. 1993), but must comply with the basic requirements of the Federal Rules of Civil Procedure, see Yang v. Archuleta, 525 F.3d 925, 927 n. 1 (10th Cir. 2008)(citing Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994)). Therefore, notwithstanding the liberal construction provided to pro se filings, the plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim.  See Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008)(citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

When ruling on a motion to dismiss, the court must accept all the factual allegations set forth in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, ____, 127 S. Ct. 2197, 2200 (2007)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  Documents attached to the complaint are considered within the pleadings, and the court may review them and consider them in deciding a motion to dismiss.  See Alexander v. Oklahoma, 382 F.3d 1206, 1214, n. 2 (10th Cir. 2004).  It is not the court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which relief can be granted. See Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  The court is not required to accept the conclusions of law or claimed application of law to the alleged facts.  See

-11-

Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994); Olpin v. Ideal National Insurance Co.,

419 F.2d 1250, 1255 (10th Cir. 1969).  The court is also not required to accept legal conclusions that

are presented as factual allegations as true. See Brooks v. Sauceda, 85 F. Supp. 2d 1115, 1123 (D.

Kan. 2000) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

        A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual

allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the allegations

in the complaint are true (even if doubtful in fact)."  Id. at 555 (internal citation omitted).  "[T]he

Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether

the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge

at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v.

Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims

across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red

Hawk, L.L.C. v. Schneider, 550 U.S. at 547 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. at

1974)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove

some set of facts in support of the pleaded claims is insufficient; the complaint must give the court

reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these

claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

### LAW REGARDING FAILURE TO RESPOND TO A MOTION

        "Failure of a party to file and serve a response in opposition to a motion within the time

prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ 7.1(b).  The court

-12-

cannot, however, grant a motion to dismiss based solely on plaintiff's failure to respond and must

consider the merits of the motion. See Issa v. Comp USA, 354 F.3d 1174, 1177-78 (10th Cir.

2003)(holding that a court must address the merits of a motion to dismiss notwithstanding the

plaintiff's failure to respond); Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002)(holding

that a district court cannot grant an unopposed motion for summary judgment unless the moving

party has first met its burden of production and demonstrates it is legally entitled to judgment under

Rule 56). This rule is "consistent with the purpose of Rule 12(b)(6) motions as the purpose of such

motions is to test 'the sufficiency of the allegations within the four corners of the complaint after

taking those allegations as true.'"  Issa v. Comp USA, 354 F.3d at 1177-78 (quoting Mobley v.

McCormick, 40 F.3d 337, 340 (10th Cir. 1994)).

### LAW REGARDING THE RIGHT TO PETITION THE LEGISLATURE

The United States and the New Mexico Constitutions guarantee an individual's right to

petition for redress of grievances. See U.S. Const. Amends., I, XIV; N.M. Const., art. II, §18. The

First Amendment to the United States Constitution states: "Congress shall make no law respecting

an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

speech, or of the press; or the right of the people peaceably to assemble, and to petition the

Government for a redress of grievances." The Supreme Court of New Mexico has stated: "This

Court has recognized that the right of access to the courts is part of the right to petition for redress

of grievances guaranteed by both the United States and New Mexico constitutions." Fiser v. Dell

Computer Corporation, 144 N.M. 464, 469, 188 P.3d 1215, 1220 (2008). Section 18 of Article II

of  the Constitution of New Mexico states that "no person shall be deprived of life, liberty or

property without due process of law; nor shall any person be denied equal protection of the laws.

Equality of rights under law shall not be denied on account of the sex of any person." "All persons

are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness." NM Const., art. II, §4.

While the First Amendment to the United States Constitution guarantees the right to petition the government for a redress of grievance, it does not guarantee a citizen's right to be heard by the government.  See Minn. State Bd. For Community Colleges v. Knight, 465 U.S. 271, 283 (1984); Smith v. Arkansas State Highway Employees, 441 U.S. 463, 465 (1979).  The government is free to ignore the ideas and petitions of the public.  See Minn. State Bd. For Community Colleges v. Knight, 465 U.S. at 286. "The First Amendment right to associate and to advocate 'provides no guarantee that a speech will persuade or that advocacy will be effective.'" Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. at 464-65 (quoting Hanover Township Federation of Teachers v. Hanover Community School Corp., 457 F.2d 456, 461 (1972). "[P]ublic bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business." City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167, 175 n.8 (1976).

> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted.  Legislatures throughout the nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received from only a select group . . . . Public officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear.  To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.

Minn. State Bd. For Community Colleges v. Knight, 465 U.S. at 284. "However wise or practicable various levels of public participation in various kinds of policy decisions may be, [the Supreme Court of the United States] has never held, and nothing in the Constitution suggests it should hold,

that government must provide for such participation." Id. at 285.  "Absent statutory restrictions, the state [is] free to consult or not to consult whomever it pleases." Id. at 284.

## LAW REGARDING LEGISLATIVE IMMUNITY

The Speech and Debate Clause of the United States Constitution establishes the concept of legislative immunity.  See U.S. Const. Art. I, § 6, cl. 1. The Supreme Court has recognized that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity,'" including § 1983 liability. Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)(quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).  Although originally afforded to members of Congress, the Supreme Court has extended the doctrine's protections to state officials acting in a legislative capacity. See Kamplain v. Curry County Board of Commissioners, 159 F.3d 1248, 1250 (10th Cir. 1998).

The Supreme Court and the Tenth Circuit have both cautioned that the scope of legislative immunity is narrowly construed, "and the government official seeking immunity bears the burden of showing that an exemption from personal liability is justified." Id., at 1251 (citing Forrester v. White, 484 U.S. 219, 224 (1988)).  The Tenth Circuit has explained that, "at its core, the legislative function involves determining, formulating, and making policy."  Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251. "In times of political passion, dishonest or vindictive motives are readily attributable to legislative conduct and as readily believed."  Tenny v. Brandhove, 341 U.S. at 378.  It is the nature of the act, not the motive or intent of the person performing it, that is relevant. See Bogan v. Scott-Harris, 523 U.S. at 54.  "The claim of an unworthy purpose does not destroy the privilege."  Tenny v. Brandhove, 341 U.S. at 377.

## LAW REGARDING QUALIFIED IMMUNITY

As the Court has previously recognized in Holguin v. City of Albuquerque, No. CIV 05-0302

JB/RHS, 2006 U.S. Dist. LEXIS 29489 (D.N.M.):

> Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)). Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

2006 U.S. Dist. LEXIS 29489, at *15-16. Qualified immunity protects federal and state officials from liability for discretionary functions, and from "the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Qualified immunity shields state officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818. A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984). Until recently, courts were required to apply a two-step analysis in deciding whether a party is entitled to qualified immunity. First the Court would determine whether the defendant violated a constitutional right and, if so, would then consider whether the right violated was clearly established. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808 (2009). In Pearson v. Callahan, the Supreme Court held that, "while the sequence set forth [in Saucier v. Katz] is often appropriate, it should no longer be regarded as mandatory." 129 S. Ct. at 818.

## LAW REGARDING THE NEW MEXICO TORTS CLAIMS ACT

The New Mexico Tort Claims Act, NMSA §§ 41-4-1 to 41-4-29, grants public employees immunity from damages in tort actions except insofar as immunity is waived by the Tort Claims Act

-16-

itself.  See id. § 41-4-4 (A).  Absent a waiver of immunity by the state under the New Mexico Torts

Claims Act, a person may not sue the state for damages for violation of a state constitutional right.

See Fireman's Fund Ins. Co. v. Tucker, 95 N.M. 56, 57, 618 P.2d 894, 895 (Ct. App. 1980).  The

Tort Claims Act preserves governmental immunity except in eight classes of activity.  See id., 618

P.2d at 895.

## LAW REGARDING §1983 CLAIMS

42 U.S.C. § 1983 protects individuals from the deprivation of their civil rights.  Specifically,

§ 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's judicial
> capacity, injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable. . . .

Generally, "[t]he only proper defendants in a Section 1983 claim are those who represent the state

in some capacity."  Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 595 (10th Cir.

1999).  Section 1983 requires that a defendant have acted under color of state law.  See Dixon v.

City of Lawton, Okla., 898 F.2d 1443, 1447 (10th Cir. 1990); 42 U.S.C. Section 1983.

A § 1983 conspiracy claim, however, may arise when a private actor conspires with state

actor to deprive a person of a constitutional right under color of state law.  See Dennis v. Sparks,

449 U.S. 24, 29 (1980).  Under §1983, it is the conspiracy which provides the requisite color of state

law.  Dixon v. City of Lawton, OK, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (internal citations

omitted).  To succeed with such a claim, the plaintiff must plead and demonstrate not only a

conspiracy but also a deprivation of rights.  See Snell v. Tunnell, 920 F.2d 673, 701 (10th Cir.

1990); id. at 1449.  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).

"[Section] 1983 'does not create civil liability' for acts undertaken 'in a field where legislators traditionally have power to act.'"  Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 732-33 (1980)(citing Tenney v. Brandhove, 341 U.S. 367, 379 (1951)). State officials "acting in their official capacities" do not quality as "persons" under § 1983. Hafer v. Melo, 502 U.S. 21, 26 (1991).  "Public officials have qualified immunity from suit under 42 U.S.C. Section 1983 as long as (1) at the time of the alleged conduct there was no clearly established statutory or constitutional right that was claimed to have been violated, and (2) a reasonable person would not have known that his or her conduct was violating a clearly established right." Silva v. Town of Springer, 121 N.M. 428, 434, 912 P.2d 304, 310 (Ct. App. 1996)(citing Oldfield v. Benavidez, 116 N.M. 785, 790, 867 P.2d 1167, 1172 (1994)); Jennings v. Hinkle, 115 N.M. at 389, 851 P.2d at 511.  "Complaints in § 1983 actions subject to qualified-immunity defenses must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made." Robbins v. Oklahoma, 519 F.3d at 1250.

> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The Twombly standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." Anderson [v. Creighton], 483 U.S. [635,] 646 n. 6[(1987)]; Harlow[ v. Fitzgerald], 457 U.S. [800,] 818. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, [Bell Atlantic Corporation v.] Twombly, [550 U.S. at 576] n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

-18-

Robbins v. Oklahoma, 519 F.3d at 1249 (internal quotation marks and citations omitted).  "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166  (1985).

Public policy considerations prohibit the assessment of punitive damages against a governmental entity under 42 U.S.C. § 1983. See Massey v. City of Oklahoma City, 643 F. Supp 81, 86 (W.D. Okla 1986).  "Punitive damages awarded against a [government entity] only 'punish' the taxpayers who took no part in the commission of the tort." Id.

A person can neither sue directly under section 241, 242 or 245 of Title 18 of the U.S. Code, nor use them as a predicate for a section 1983 action.  See Dugar v. Coughlin, 613 F.Supp. 849, 852 n.1. (D.S.D.N.Y. 1985).   The Court should dismiss claims under 18 U.S.C. § 241 because private citizens do not have the authority to enforce criminal statutes.  See Newcomb v. Ingle, 827 F.2d 675, 677 n.1 (10th Cir. 1987).   18 U.S.C. § 245 specifically reserves the right of prosecution to government officials.  See 18 U.S.C. § 245(a)(1).

## LAW REGARDING § 1985 CLAIMS

42 U.S.C. § 1985 pertains to the prohibition of conspiracy which interfere with civil rights. See 42 U.S.C. § 1985.[3] The Supreme Court recognizes "five broad classes of conspiratorial activity"

---

[3]§ 1985. Conspiracy to interfere with civil rights

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his

that § 1985 prohibits. See Kush v. Rutledge, 460 U.S. 719, 724 (1983). "Three of the five broad

categories . . . relate to institutions and processes of the Federal Government." Id. The fourth and

---

office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

fifth classes of § 1985 claims apply to conspiracies to "obstruct the course of justice in state courts" and to "go in disguise on the highway or in the premises of another." Kush v. Rutledge, 460 U.S. at 724 (internal quotation marks omitted).  Both of these categories require an "intent to deprive their victims of the equal protections of the laws," id., which means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action," id. at 726 (internal quotation marks omitted). See Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979) ("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").

To succeed on a § 1985 claim, a conspiracy must be proven.  See Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1447 (10th Cir. 1990). To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (discussing conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983) (discussing conspiracy under § 1983).

The Tenth Circuit has held that it is error to "precondition consideration of a plaintiff's §1985(3) claim upon the finding of § 1983 liability."  Dixon v. City of Lawton, Okla., 898 F.2d at 1447 (10th Cir. 1990). "Although neither §1983 nor §1985(3) create any substantive rights, a §1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws."  Id.

-21-

## LAW REGARDING 42 U.S.C. § 1986

42 U.S.C § 1986, in relevant part states:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; . . .

Without a conspiracy under § 1985, there cannot be a claim under § 1986.   See Santistevan v. Loveridge, 732 F.2d 116, 118 (10th Cir. 1984).

## LAW REGARDING 18 U.S.C. §1962

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 to 1968, prohibits organized crime.  An individual has a private right of action under the Act. See 18 U.S.C. § 1964(c).  To succeed in his or her claim, an individual must not only show that the defendant's act was "'but for' cause of his injury, but was the proximate cause as well." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) (citing Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 268 (1992)).

18 U.S.C. § 1962 states, in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

. . .

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

-22-

affairs through a pattern of racketeering activity or collection of unlawful debt.

More simply, a violation of any subsection of 18 U.S.C. § 1962 requires evidence that the defendant participated in a pattern of racketeering activity. See Bancoklahoma Mortgage Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1100 (10th Cir. 1999).

> 18 U.S.C. § 1961 (1) defines "racketeering activity" as
>
> (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), . . . section 1941(relating to mail fraud, section 1343 (relating to wire fraud), . . . section 1951 (relating to interference with commerce, robbery, or extortion), . . . ;

Under federal law, "[p]attern of racketeering activity" is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

**1.    Bribery**.

18 U.S.C. § 201(b) is the federal anti-bribery statute.  Generally, the application of 18 U.S.C. § 201(b) is limited to acts of federal officials or persons "acting for or on behalf of the United States, or any department, agency or branch of the Government thereof . . . . " 18 U.S.C. § 201(a)(1).  The statute requires that the actor occupy a position of public trust with official federal responsibilities. See Dixson v. United States, 465 U.S. 482, 496 (1984).  The term "public official" is defined as

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

18 U.S.C. § 201(a)(1).  "Person who has been selected to be a public official" is defined as "any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed." 18 U.S.C. § 201(a)(2).

**2.      Fraud Generally.**

To succeed on a claim of fraud, there must be a "(1) representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury." Tal v. Hogan, 453 F.3d 1244, 1260 (10th Cir. 2006)(citing BancOklahoma Mortgage Corp., 194 F.3d at 1103).  When there is a complaint alleging fraud, the pleading standard set forth in rule 9(b) of the Federal Rules of Civil Procedure applies.  See Tal v. Hogan, 453 F.3d 1244, 1260 (10th Cir. 2006).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Thus, a party alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Tal v. Hogan, 453 F.3d at 1260 (citing Koch v. Koch Indus., 203 F.3d 1202, 1236 (10th Cir. 2000)).

**3.      Mail Fraud.**

18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever

to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, . . . .

**4.**   **Wire Fraud.**

Pursuant to 18 U.S.C. § 1343:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . . .

**5.**   **Interference with Commerce, Robbery, or Extortion.**

18 U.S.C. § 1951 states, in relevant part, that:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section–

. . .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

It would appear that assault would be covered under this provision as the definition of extortion

includes "actual or threatened force, violence, . . . ."

-25-

New Mexico law also prohibits racketeering activities.  Specifically, NMSA § 30-42-4 states, in relevant part:

> A. It is unlawful for any person who has received any proceeds derived, directly or indirectly, from a pattern of racketeering activity in which the person has participated, to use or invest, directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of any interest in, or the establishment or operation of, any enterprise. . . .
>
> B. It is unlawful for any person to engage in a pattern of racketeering activity in order to acquire or maintain, directly or indirectly, any interest in or control of any enterprise. . . .
>
> C. It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity. . . .

Similar to the federal statutes, the New Mexico statute requires a pattern of racketeering activities.  NMSA § 30-42-3 defines "pattern of racketeering activity" as

> engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section § 30-42-4 NMSA 1978; provided at least one of the incidents occurred after the effective date of the Racketeering Act and the last incident occurred within five years after the commission of a prior incident of racketeering.

Both the federal and state racketeering statutes prohibit conspiracy in performing the activities prohibited under the acts.[4]  "A conspiracy claim under 18 U.S.C. §1962(d) fails when the substantive claim based on §1962(c) is without merit."  Bancoklahoma Mortgage Corp. v. Capital Title Company, Inc., 194 F3d 1089, 1100 (10th Cir. 1999)(citing Edwards v. First Nat'l Bank, Bartlesville, Okla., 872 F.2d 347, 352 (10th Cir. 1989)).

---

[4]18 U.S.C. § 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  NMSA § 30-42-4D states: "It is unlawful for any person to conspire to violate any of the provisions of Subsections A through C of this section. Whoever violates this subsection is guilty of a third degree felony."

The racketeering acts set forth in the RICO statute are referred to as "predicate acts" and form the basis for liability under RICO.  Bancoklahoma Mortgage Corp. v. Capital Title Company, Inc., 194 F.3d at 1100 (citing Bacchus Industries, Inc. v. Arvin Industries, Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  "Proof of two or more predicate acts are not sufficient to prove a pattern unless there is a relationship between the predicate acts and a threat of continuing activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989); Duran v. Carris, 238 F.3d 1268, 1271 (10th Cir. 2001).  "Continuity of threat requires both proof of 'a series of related predicates extending over a substantial period of time,' as well as a 'showing that the predicates themselves involve a distinct threat of long-term racketeering activity . . . or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise.'" Tal v. Hogan, 453 F.3d 1244, 1268 (10th Cir. 2006)(citing Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1543 (10th Cir. 1993)). It must be shown that the "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. at 240.  See Duran v. Carris, 238 F.3d 1268, 1271 (10th Cir. 2001).

Only "persons" can violate under § 1962 and be liable for civil damages under § 1964.  See Massey v. City of Oklahoma City, 643 F. Supp. 81, 85 (W.D. Okla. 1986).  A suit against a government official in his official capacity is no different than a lawsuit against the government itself.  See Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995).

## LAW REGARDING CONSPIRACY IN ANTITRUST

"Bare bones accusations of a conspiracy without any supporting facts are insufficient to state an antitrust claim."  Tal v. Hogan, 453 F.3d at 1261 (citing Mountain View Pharmacy v. Abbot Labs, 630 F.2d 1383, 1388 (10th Cir. 1980)).  "The use of antitrust 'buzz words' does not supply the factual circumstances necessary to support . . . conclusory allegations." TV Commc'ns Network,

Inc. V. Turner Network Television, Inc., 964 F.2d 1022, 1026 (10th Cir. 1992).

"Few governmental actions are immune from the charge that they are "not in the public interest" or in some sense "corrupt." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 377 (1991). Accordingly, "where the action complained of . . . [is] that of the State itself, the action is exempt from antitrust liability regardless of the State's motive in taking the action." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 377-78 (1991)(citing Hoover v. Ronwin, 466 U.S. 558, 579-580 (1984)). "It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became . . . co-conspirators in some sense with the private party urging such action." Tal v. Hogan, 453 F.3d at 1260 (citing City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. at 383). The courts consistently seek to avoid a "deconstruction of the governmental process and probing of the official 'intent.'" City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. at 377.

## NOERR-PENNINGTON DOCTRINE

There is an exception to the antitrust laws referred to as the Noerr-Pennington doctrine,[5] the essence of which is that "parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1082 (5th Cir. 1988). The immunity of political expression does not depend on the motives of the parties involved. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 139-40 (1961). And, mere attempts to influence the

---

[5]This doctrine originated from two cases: Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965).

legislative branch are not enough to sustain a cause of action.  See California Motor Transport Co., v. Trucking Unlimited, 404 U.S. 508.  "In a representative democracy such as this, these branches of government act on behalf of the people, and to a very large extent, the whole concept of representation depends on the ability of the people to make their wishes known to their representatives." Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. at 137. The immunity does not protect fraudulent or illegal actions.  See Tal v. Hogan, 453 F.3d at 1260 (citing Oberndorf  v. City & County of Denver, 900 F.2d 1434, 1440 (10th Cir. 1990)).  It is only when the acts of a party is an attempt to directly interfere with the business relationship of a competitor that the political expression is considered a sham violative of the law.  See Tal v. Hogan, 453 F.3d at 1260.  By itself, political activity to inform the government of one's wishes is not illegal. See id. at 137.  "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380 (1991)(citing Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 500, n. 4 (1988)). Lobbyists and applicants, in addition to getting themselves heard, use procedural and other means to get their opponents ignored; such are valid, legal defensive strategies.  See City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. at 382.  "[C]ultivating close ties with government officials is the essence of lobbying."  Tal v. Hogan, 453 F.3d at 1260 (10th Cir. 2006)(citing Boone v. Redevelopment Agency of the City of San Jose, 841 F.2d 886, 894 (9th Cir. 1988))."The federal antitrust laws . . . do not regulate the conduct of private individuals in seeking anticompetitive action from the government." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. at 379-80.  It is irrelevant whether a private party's motives for its political acts are selfish. See City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. at 380.

Any behavior by a private party that is protected from antitrust liability is also protected from

-29-

§ 1983 liability and common-law tortious interference with contractual relations.  See Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir. 1988).  The United States Court of Appeals for the Fifth Circuit has explained: "To hold otherwise would effectively cast a cloud over a broad range of causes that are brought before courts, legislatures, or governmental agencies."  Id.

### LAW REGARDING AWARDS OF ATTORNEY'S FEES AND COSTS

With regard to the award of attorney's fees and costs, the Tenth Circuit follows the "American Rule," under which parties to a lawsuit ordinarily pay their own attorney's fees.  See Pound v. Airosol Company, Inc., 498 F.3d 1089, 1100 (10th Cir. 2007).  The Tenth Circuit has stated, under the American Rule, a party may recover attorney's fees only when there is explicit statutory authorization.  See Pound v. Airosol Company, Inc., 498 F.3d at 1100 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975)).

### ANALYSIS

While Bonadeo does not show any recent inclination or desire to files responses on hearings, the Court will grant his motion for an extension of time.  Bonadeo does not have, however, any viable federal claims against any Defendants.  The Court will deny all federal claims and remand the state claims to state court.

### I.    THE COURT WILL GRANT BONADEO THE EXTENSION TO FILE RESPONSES THAT HE REQUESTED.

The Defendants object to Bonadeo's continual request for extensions of the time to respond to the motions that they have filed.  The first motion to dismiss -- the State Defendants' Motion to Dismiss No. I: Dismissal of All Claims Based on Absolute Immunity, or in the Alternative, Dismissal of All Federal Constitutional Claims Based on Qualified Immunity-- was filed September

-30-

22, 2008 by Lujan, Trujillo, Rodella and Park, more than seven months prior to today.  The last motion to dismiss, Defendant Maurice Bonal's Motion to Dismiss, was filed by Bonal on January 9, 2009, more than three months ago.  See Doc. 51.  No documents have been filed by any party to the litigation since February 4, 2009.

The local rules provide that failure of a party to respond to a motion is the party's consent to grant the motion.  See Local D.N.M. LR-Civ 7.1(b).  In addition to being presumed to have read the local rules of court, Bonadeo was reminded of this rule by the Honorable Alan C. Torgerson, United States Magistrate Judge, when he ruled on Lujan, Trujillo, Rodella and Park's motion to stay discovery.  See Doc. 26 ("The district court's local rules provide that the failure to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion").  Specifically, Judge Torgerson noted that the Court could grant the motion solely because of Bonadeo's failure to respond to the motion.  See Doc. 26 at 3.  Ironically, in his motions for an extension of time, Bonadeo acknowledges that "it is often the case that a court will dismiss a case based on the failure of a party to respond to a motion to dismiss."  Doc. 38 ¶ 10 at 4.  Nevertheless, Bonadeo has continued to fail to respond to the motions to dismiss.

Bonadeo has requested multiple extensions to respond to Lujan, Trujillo, Rodella and Park's motions to dismiss.  Bonadeo filed his last request for an extension fourteen days after the date to which the Court had already allowed an extension of his response time.  Bonadeo was not even timely in requesting his extension.  Bonadeo, in his request for an extension, listed excuses why he could not file his responses during the fourteen days after the due date,[6] but did not provide any

---

[6]In the motion, Bonadeo stated that he has not had sufficient time to respond to the motions because of: (i) the great complexity of the issue, (ii) the extensive nature of the Defendants' motions, (iii) his lack of experience in prosecuting a case, and (iv) his limited access to the public law libraries and other legal resources during non-work hours.  See Doc. 43 ¶ 8 at 6.

reasonable justification of why he did not file even for an extension prior to the date the responses were due.[7]  The date to which Bonadeo was requesting his extension was "January 29, 2008 [sic]." In his motion, Bonadeo stated that he would file no further requests for extensions of time to file responses to Defendants' motions to dismiss.  See Doc. 43 ¶ 14, at 9.  Still, months after that date, Bonadeo has not filed any responses to any motions to dismiss.[8]

Bonadeo on November 17, 2008 requested an extension of the time for him to respond to the motion to dismiss by O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits, citing tardy service of the motion.  See Doc. 38 ¶ 14, at 5.  More than five months have passed, and Bonadeo has still not filed a response.  As justification for his failure to file a response, Bonadeo stated that during the same time period he needed to author and file seven motions which the court would be receiving shortly.  See Doc 38 ¶ 12, at 5. Bonadeo has only filed two motions since November 17, 2008.

On January 9, 2008, Bonal filed a motion to dismiss in this case.  Bonadeo has not responded to the motion.  Bonadeo has also not requested an extension of the date by which he must respond to the motion.

Bonadeo has not fulfilled his legal responsibilities as a party or followed the Court's local rules.  Under the local rules, "[a]n extension of briefing time must not interfere with established case management deadlines." D.N.M.LR-Civ. 7.4(a).  While the Court has not yet established any case

---

[7]On December 12, 2008, three days before his responses to the motions were due, Bonadeo filed Plaintiff's Motion for Imposition of Rule 11 Sanctions against Defendants O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits.  See Doc. 41.

[8]The Court filed the notice of this hearing on April 2, 2009.  Yet, in anticipation of the hearing, Bonadeo has still not filed any responses to the motions.

management deadlines for this matter, in light of Bonadeo's continual failure to respond in good faith to the motions, it is not logical for the court to expect that Bonadeo will actually file a response.

Nevertheless, the Court wants to give Bonadeo an opportunity to file responses if he desires. The Court prefers to decide motions on the merits, after the parties have had a full opportunity to brief and argue them.  That is the reason the Court set a hearing on these motions rather than ruling on the papers.  Accordingly, the Court will grant Bonadeo's right to file response to these motions -- (i) Doc. 9; (ii) Doc. 10; (iii) Doc. 11; and (iv) Doc. 21 -- by January 29, 2009.  Moreover, as the Court stated at the hearing, Bonadeo is welcome to file even today any responses he wishes. Nevertheless, in fairness to the Defendants, the Court will proceed with consideration of the motions to dismiss on the merits and not wait any longer on responses.  In sum, however, Bonadeo's motion for extensions is granted.

## II.   LUJAN, TRUJILLO, RODELLA AND PARK ARE ENTITLED TO ABSOLUTE LEGISLATIVE IMMUNITY.

The legislative function is important to the success of a state and its governance.  The Tenth Circuit has recently stated: "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." Sable v. City of Nichols Hills, No. 07-6286, at 7 (10th Cir. 2009). Lujan, Trujillo, Rodella and Park are duly elected representatives of the State of New Mexico.  It is their legislative function that provides them with absolute immunity from suit.

The acts which they were performing and which are the focus of this suit are legislative. These legislators were considering, debating and voting on proposed bills during the legislative session -- legitimate legislative activity.  The direction that a state representative chooses in considering the many competing interests of constituents is part of their legislative function.  The balancing of these competing interest is left to the legislators discretion, and the legislators may act

through consideration or nonconsideration of issues. There may even be agreements between legislators for different purposes and to further their legislative needs and interests.

Bonadeo states several reasons that he believes were the basis for Lujan, Trujillo, Rodella and Park's alleged defeat of his proposed bill, but the intent or motive of the legislators is not important. The nature of the act is important. Here, the nature of the act was legislative, and Bonadeo does not argue otherwise, or point to an act that is not legislative. The Court will not, and is not entitled to, interfere with the rights of the people under a democratic process by delving into the considerations involved in the legislative process. Lujan, Trujillo, Rodella and Park have absolute immunity from suit with regard to their legislative activities. The State Defendants' Motion to Dismiss No. I: Dismissal of All Claims Based on Absolute Immunity, or in the Alternative, Dismissal of All Federal Constitutional Claims Based on Qualified Immunity will be granted in part. The Court need not consider the applicability of qualified immunity.

## III.   BONADEO HAS NOT BEEN DEPRIVED OF A CONSTITUTIONAL RIGHT.

Bonadeo asserts as the constitutional right upon which his Complaint is based that, "[u]nder the constitution of the state of New Mexico, [he] had a right to petition the legislature to have the legislation drafted, debated and voted upon for adoption," and that those "rights be exercised in the due course and due process of law." Doc. 1-2 ¶ 45, at 11. Bonadeo asserts that the Defendants illegally interfered in the legislative process, see Doc. 1-2 ¶ 47, at 12, and that the Defendants were legally required to open a vote on SB1071 and vote on it, and together agreed and acted to deny Bonadeo of his civil right, see Doc. 102 ¶¶ 48 and 49, at 12.[9]

---

[9] Bonadeo in most instances fails to articulate to which Defendant he is referring. Only Lujan, Trujillo, Rodella and Park are representatives of the state. The other Defendants are private entities and individuals.

-34-

Under the United States Constitution, Bonadeo has only the right to petition the government. He was able to and did exercise this right. Bonadeo is not entitled, and does not have a right, to participate in the consideration process of his petition, or to have his petition debated or voted upon. The right to petition allows a person to provide information to the government. There are no procedural protections, however, requiring the government to consider that information or petition. There are no due process, civil rights, or equal protection issues involved with the defeating of this piece of legislation. The government has a right to consider and not consider petitions, testimony and debate as they choose. There is no law or other legal authority which states otherwise.

There is no constitutional right of which Bonadeo has been deprived. Accordingly, the Court will dismiss the § 1983 claims against them.

## IV.     **THE ACTS OF THE DEFENDANTS DID NOT VIOLATE RICO.**

Lujan, Trujillo, Rodella and Park are protected from suit by absolute legislative immunity. There is rarely an instance when an act of the government cannot be called by someone corrupt, or an entity or individual cannot assert that the state was acting for the benefit of another. The legislators enjoy immunity because of the functions in which they participate, not because they had pure motives.

Bonadeo asserts that the Defendants' acts constitute criminal activity, including fraud, extortion, bribery, conspiracy against rights and assault. See Doc. 102 ¶ 76, at 16. He further asserts that such acts constitute racketeering under the New Mexico statutes and 18 U.S.C. § 1962. Bonadeo, however, has not provided sufficient facts to constitute any of the racketeering activities or any evidence of a "pattern of racketeering activity," at least under federal law, by the remaining Defendants.

With regard to bribery, the federal bribery statute is generally applied only to federal officials

-35-

and those acting on behalf of the United States, or of a department, agency or branch thereof.  None of the Defendants are federal officials.  The Court does not allege facts indicating that the Defendants received anything of value from the other Defendants or for any third party.  Bonadeo did not support with facts any of his bribery allegations.

While Bonadeo alleges fraud, he does not recognize the specific fraud claims (e.g., mail and wire fraud) under RICO.  Further, Bonadeo fails to include in his Complaint the necessary facts to sustain any claim for fraud as required under rule 9(b).  Bonadeo has not articulated the fraudulent representations that any Defendant made, and, he has not articulated any misrepresentations or omission of material fact that he relied upon to his detriment.[10]  To succeed on a complaint for fraud, Bonadeo must meet the elements of the statute and the requirements of rule 9(b).

With regard to a claim of extortion/assault under the Hobbs Act, 18 U.S.C. § 1951, Bonadeo does not allege that the Defendants coerced him to part with property, an element of extortion.  With regard to threats and acts of violence, while Bonadeo states that Park attempted to assault him, see Complaint ¶ 37, at 10, he does not provide any facts of how such attempted assault occurred.  He also does not demonstrate that there was any fear associated with these charges.

Bonadeo fails to allege sufficient facts to recognize a claim of racketeering activity under federal law.  Bonadeo also fails to show a pattern of racketeering activity.  Central to every claim of racketeering under both the state and federal acts is the requirement that a pattern of racketeering have occurred.  But Bonadeo does not demonstrate any pattern of racketeering activity, at least under federal law.  The events that Bonadeo discusses occurred over a few days during the legislative session.  Upon the close of the legislative session, there was no continuing effect of the

---

[10]Bonadeo asserts that he believed that Bonal supported his proposed legislation, but does not provide detail as to how he formed that belief nor indicate the materiality of such belief.

Defendants' activities.  The acts of the Defendants could, at best, be considered a common scheme, but which comprise only one closed-end event.  Assuming the facts asserted by Bonadeo are correct, there was only one goal: to defeat SB1071.  The defeat has occurred.  There is no continuing threat. No relief can properly be granted based upon Bonadeo's federal racketeering claims.  State Defendants' Motion to Dismiss No. II: Dismissal of Plaintiff's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and Tortious Interference with Contractual Relations Claims (Doc. 10), as joined by O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesales Association and Southern Wine and Spirits will be granted with regard to the RICO claims against the non-legislative Defendants.  Lujan, Trujillo, Rodella and Park being entitled to absolute immunity, the portion of the motion regarding the federal RICO Act's application to this will be denied as moot.

## V.   THE COURT CANNOT PROPERLY GRANT RELIEF UNDER BONADEO'S CLAIMS MADE PURSUANT TO 42 U.S.C. §§ 1983, 1985 AND 1986.

Bonadeo asserts a right to sue for a § 1983 under 18 U.S.C. §§ 241, 242 and 245.  18 U.S.C. §§ 241, 242 and 245 do not, however, permit a private right of action by individuals.  Also, there can be no § 1983 or § 1983 conspiracy claim because, as already determined, there is no constitutional violation.  There was no deprivation of rights.

Even taking all of Bonadeo's asserted facts as true, he fails to set forth sufficient facts to comprise an actionable conspiracy claim under any of the subsections of § 1985.  Bonadeo fails to assert that he was acting as a federal officer when he was deprived of his rights,[11] that the defendants interfered with the administration of justice in the courts, or that there was some race-based or other

_____

[11]This factor in itself is not proveable, it already having been determined that there was no deprivation of rights.

class-based invidious discriminatory animus.  Moreover, because there is no valid § 1985 claim, there can be no valid §1986 claim.  The Court will dismiss the § 1983, 1985, and 1986 claims against the remaining Defendants.

**VI.   FRED O'CHESKEY, MALOOF COMPANIES, NEW MEXICO ALCOHOL BEVERAGE WHOLESALES ASSOCIATION, SOUTHERN WINE AND SPIRITS AND BONAL ARE EXCEPTED FROM ANTITRUST UNDER THE NOERR-PENNINGTON DOCTRINE.**

Given that Bonadeo is a pro se plaintiff, the Court will read his Complaint liberally. Construing the Complaint liberally, the Court sees what might be a claim for an antitrust violation. Doc. 1-2 ¶ 69, at 16.  To the extent Bonadeo is attempting to bring an antitrust claim against the remaining Defendants, the Court finds the Noerr-Pennington doctrine applicable.  Bonadeo stated that Defendants caused the legislation to be excluded because of its potential to harm the Defendants' personal interests, "including the Defendants' personal interest in reducing competition with the larger liquor-and alcohol-related concerns."   Doc. 1-2 ¶ 69, at 16. Both sides have communicated with the legislature and both sides are entitled to First Amendment protections for those communications. While Bonadeo was exercising his political rights by promoting his proposed legislation, O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesales Association, Southern Wine and Spirits and Bonal were exercising their rights by promoting their views and by defeating the passage of Bonadeo's proposed legislation. These individuals had different views of the proposed legislation than Bonadeo would have liked and worked to gain allies in support of their view.  Bonadeo could have used the same strategy.  Nothing prohibited Bonadeo from working to gain allies in support of his cause.

There is no indication that the activities of O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesales Association, Southern Wine and Spirits or Bonal were a sham.

Bonadeo has provided no allegation of intent by these parties to cause Bonadeo expense or to delay the process.  Within the Complaint, there was only a thin reference to specific acts performed by and facts relating to these Defendants.  Based on those facts, none of the acts were illegal or fraudulent.  The lobbying activities were valid, regardless of what the lobbying motives were.  Nevertheless, even if the intent of the lobbyists was to eliminate the competition which would result from the passage of the bill, such intent is a legitimate business interest not equivalent to a sham or illegal action.  For the Court to filter communications with legislators would hinder the flow of information.  Thus, to the extent that there is any claim for a violation of antitrust law in the Complaint, these Defendants are immune from antitrust suit under the <u>Noerr-Pennington</u> doctrine.

## VII.    THE COURT WILL REMAND THE REMAINING STATE-LAW CLAIMS.

The supplemental jurisdiction statute enumerates four factors that the court should consider in whether to decline jurisdiction:

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).  Thus, when a federal court dismisses all federal law claims and leaves only state-law claims, the court may remand the state-law claims.

In this case, the Court has dismissed all federal claims.  The factors enumerated in 28 U.S.C. §1367(c) counsel in favor of the Court remanding the remaining state-law claims.  The Court will therefore remand any remaining state-law claims to state court.

-39-

## VIII.   NO ATTORNEY'S FEES OR COSTS WILL BE GRANTED.

The Defendants have provided no legal basis for being awarded attorney's fees and costs. The Defendants do not point to any statute or other basis for deviating from the American Rule. Accordingly, the Court will deny their requests for fees.

**IT IS ORDERED** that (i) State Defendant's Motion to Dismiss No. I: Dismissal of All Claims Based on Absolute Immunity, or in the Alternative, Dismissal of All Federal Constitutional Claims Based on Qualified Immunity (Doc. 9), filed by Defendants Ben Lujan, Jim Trujillo, Deborah Rodella and Al Park; (ii) State Defendants' Motion to Dismiss No. II: Dismissal of Plaintiff's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and Tortious Interference with Contractual Relations Claims (Doc. 10), filed by Lujan, Trujillo, Rodella and Park; (iii) State Defendants' Motion to Dismiss No. III: Dismissal of Bonadeo's Civil Conspiracy and State Constitutional Claims (Doc. 11), filed by Lujan, Trujillo, Rodella and Park; (iv) Defendants' Fred O'Cheskey, Maloof Companies, New Mexico Alcohol Beverage Wholesalers Association and Southern Wine and Spirits Motion to Dismiss (Doc. 21) and (v) Defendant Bonal's Motion to Dismiss are granted in part and denied in part.  Bonadeo's Motion Seeking Leave of the Court to File Untimely Motion for Further Extension of Time to File Response to Defendant's Motions to Dismiss (Doc. 43) is granted.  The federal claims are dismissed and the remaining state-law claims are remanded to the state court.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel of Record:*

Robert Bonadeo
Post Office Box 22114
Santa Fe, New Mexico 87502

     *Plaintiff Pro Se*

Luis E. Robles
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Ben Lujan, Jim Trujillo, Deborah Rodella, and Al Park*

Michael J. Cardigan
Cadigan Law Firm, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Fred O'Cheskey, Maloof Companies, New Mexico Alcohol*
       *Beverage Wholesalers Association and Southern Wine and Spirits of New Mexico*

Mark T. Baker
Long, Pound & Komer, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendant Maurice Bonal*